RICHARD L. BIRKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
THOMAS I. BIRKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
CHARLES W. BIRKIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2097–2099.    Decided November 9, 1926.

1. Under the Sixteenth Amendment and section 213 of the Revenue Act of 1918, defining gross income, income includes the entire gain realized upon the sale of goods in the ordinary course of business in this country, irrespective of where an increment in value has its situs.

2. The capital or labor from which income is derived in this country need not be within the territorial jurisdiction of the United States in order that the income may be taxed.

3. Where goods are manufactured abroad by nonresident alien individuals and sold in this country, the entire profit constitutes

"gross income from sources within the United States," within the meaning of section 213 (c) of the Revenue Act of 1918.

4. The statute does not provide for the apportionment or exclusion of any part of the profit in determining the source of the income from such sales.

5. The fact of manufacture of goods abroad does not reduce the profits from their sale in this country.

6. An opinion of the Attorney General is not determinative before the Board, although it will be given regard to the extent that it may aid toward a sound conclusion.

*George O. May, C. P. A.*, and *Edward B. Burling, Esq.*, for the petitioners.

*George K. Bowden, Esq.*, and *S. Duffield Mitchell, Esq.*, for the respondent.

Deficiencies in income tax for 1919 against nonresident aliens who manufacture abroad and sell in the United States. The parties agree upon the facts.

### FINDINGS OF FACT.

The petitioners are nonresident aliens residing in England and doing business in a partnership called Birkin & Co. with an office in New York. The partnership manufactures laces in Great Britain and ships them to and sells them in the United States. They carry on no manufacturing in the United States.

In 1919 they sold in the United States certain laces which they had manufactured in Great Britain and imported into the United States. The price realized on account of such sales was $457,494.21. Selling and other expenses incurred in the United States in 1919 in connection therewith were $53,096.09. The actual market value or wholesale or factory price of the said laces in Great Britain at the time of exportation, plus the duty paid to the United States under the United States customs laws, plus shipping and landing charges, aggregated $347,813.63. The cost of manufacturing the said laces in Great Britain, plus the duties paid to the United States, plus shipping and landing charges, was $312,899.28.

The Commissioner determined that the net income of the partnership was $91,498.84, the difference between the sale price of $457,-494.21 and the sum of manufacturing cost of $312,899.28 and selling and other expenses of $53,096.09.

Richard L. Birkin included in his income of 1919 from sources within the United States $14,616.66, which was his distributive share of the net income of $56,582.49 reported by the partnership for the fiscal year ended October 31, 1919. Thomas I. Birkin so reported $14,616.67, and Charles W. Birkin, $27,349.16.

OPINION.

STERNHAGEN: The petitioners are British subjects who in 1919 sold in the United States goods which they manufactured in Great Britain. They were subject to tax under the Revenue Act of 1918.

Section 213, after setting forth in (a) the items included in the term gross income and in (b) the items excluded, treats of non-resident alien individuals in (c), as follows:

In the case of nonresident alien individuals, gross income includes only the gross income from sources within the United States, including interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, dividends from resident corporations, and including all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits on the manufacture and disposition of goods within the United States.

The controversy calls for a determination of the "gross income from sources within the United States." The petitioners say that, since manufacture abroad is a factor from which the price acquired on sale in the United States results, a part of the profit contained in such price is to be attributed to manufacture and hence to be regarded as from a source not within the United States. The part of the profit so to be treated is taken by petitioners to be the difference between cost of manufacture abroad and market value abroad at the time of exportation. Thus, to arrive at what they regard as the statutory gross income, petitioners subtract from the gross sales price in the United States the market value abroad plus United States customs duty and freight and incidental import costs. The Commissioner has held that all the profit is derived from sale in this country and that gross income is the difference, as it is for residents, between gross sale price on the one hand and actual cost of goods sold, including duty and incidental charges, on the other. Thus the Commissioner eliminates from the subtraction the increment contained in market value abroad and taxes as income its realization by sale in this country.

The issue is said to be not as to the power of Congress, but as to the meaning and proper application of the statute; specifically as to the word "source." We lay aside at once the dictionary definition, since the word is of such general application and may be so variously used that discussion of it would go too far afield to be helpful. The true question is as to how far the language of the statute indicates that Congress intended to go in taxing the income of these nonresident alien individuals.

Both parties in brief and argument discuss at some length the merits of an opinion of the Acting Attorney General officially given to the Secretary of the Treasury on November 3, 1920, (32 Ops.

Atty. Gen. 336) touching upon the same subject and upon which the Secretary has relied in his administration of the statute. 22 T. D. 566, Dec. No. 3111. Notwithstanding the great respect to which that high officer's opinion is entitled, it is not determinative before this Board. The Board is required by the statute to decide in accordance with the law as it understands it and as authoritatively adjudicated by the courts. To this end it must examine for itself the merits of the question at issue, and it will give regard to the Attorney General's opinion only to the extent that such opinion may aid toward a sound conclusion.

That the acquisition of profit by these petitioners when their goods are sold in the United States is in some way related to the manufacture of the goods as well as to their sale is irrefutably true. Whether this be an economic fact or a legal fact is beyond the scope of our determination; its recognition as a fact is sufficient. This does not carry with it any answer to the present problem, for the question still is whether the fact of manufacture abroad reduces the profit from sale here—whether it necessitates the conclusion that such profits are to any extent from sources abroad.

As a matter of law we can not conclude that they are. The profits are all brought about by sale here. In the terminology of the tax return, they represent " gross sales," from which should be subtracted " cost of goods sold " to arrive at gross income. And cost of goods sold is what the term indicates, namely, cost—which has nothing to do with value whether here or abroad. The fact, if in any case it be true, that the sale price reflects an appreciation of value in the goods before their importation into this country does not increase cost or reduce the actual gain at the time of sale. Nor would a diminution of value abroad below cost increase the gain. Neither cost nor sale price is changed because the intervening transportation has crossed the boundary, except for the transportation expense.

The law of the United States recognizes no income in the unrealized appreciation of value of goods or property, *Lynch* v. *Hornby*, 247 U. S. 339; *Eisner* v. *Macomber*, 252 U. S. 189; but treats such appreciation as taxable income only when it comes to hand as the profit from sale. *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509. As to property owned on March 1, 1913, the time of the effective date of the first Income Tax Act after the adoption of the Sixteenth Amendment, unrealized increment may be added to actual cost, but only in certain cases, *Lynch* v. *Hornby*, *supra*, and, to a certain extent, *McCaughn* v. *Ludington*, 268 U. S. 106. It must be, therefore, that under the Constitution and the Act, " income from whatever source derived " includes the entire gain realized upon sale

of goods in the ordinary course of business in this country, irrespective of where the increment has its situs.

Looking at the statement in *Eisner* v. *Macomber*, 252 U. S. 189, and other cases, that income is the "gain derived from capital, from labor, or from both combined," including "profit gained through a sale or conversion of capital assets," the petitioners argue that so much of the profit as represents market value abroad is not derived from capital or labor in this country, and hence is not United States income,—which is a constitutional question. Even assuming that the foregoing statement of the attributes of income was intended to be definitive so as to exclude all accretions to wealth not within the scope of its terms—a proposition not simply to be adopted, cf. *Irwin* v. *Gavit*, 286 U. S. 161—it still does not necessarily mean that the capital or labor must be itself within the territorial jurisdiction of the United States—cf. *Cook* v. *Tait*, 265 U. S. 47. Since under our law the conversion of capital appreciation into profit by sale is income and not capital, and since in this case such profit was entirely acquired in the United States, the effect of taxing it is simply to tax income derived in this country.

But it is argued that as to nonresident aliens Congress has not taxed all such income but only such as is derived from sources within the United States; and further, that as manufacturing is part of the source of all the income, it may be said that it is the entire source of an allocated part of the income, which part is therefore not taxed. This we think is reasoning beyond the statute in question. It may be quite reasonable from the standpoint of cost accounting or other statistical study to say that because manufacturing is part of the cause of the whole income a reasonable part thereof should be so attributed and allocated to manufacture. But this does not establish as a fact that the source of such aliquot part is not sale. Sale was necessary to its existence and was the most recent if not the entire source. If not the entire supporting arch, it was the indispensable keystone. As Congress within its power did not either exclude or apportion it, we can not say it intended to do so. It will be noted that apportionment on one basis or another is expressly provided in section 214 as to certain deductions, and has since been expressly provided in the Revenue Act of 1921 and later acts. Whether Congress took into consideration the fact that the United States was at the same time receiving import duty *ad valorem* and thus to some extent in effect taxing the same value which it later taxed as income derived from sale, we are not at liberty to consider, this being a legislative question. Nor may we assume that Congress ignored the comparison between the British method of taxation and our own.

The decisions such as *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S. 113; *Bass* v. *Tax Commission*, 266 U. S. 271; and also *Erichson* v. *Last*, 4 Brit. Tax Cas. 422, all involve statutes and law so different from that before us that they are not in point. Congress made no apportionment and none may be imported into the statute.

> *Judgment will be entered for the Commissioner.*

TRAMMELL did not participate.