BURK BROTHERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36571. Promulgated September 4, 1930.

*Charles D. Hayes, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

BLACK: Respondent has asserted against petitioner deficiencies as follows:

| | |
|---|---|
| 1924 | $2, 506. 28 |
| 1925 | 6, 256. 47 |
| Total | 8, 762. 75 |

and from this determination petitioner has appealed and urges only one error and that one is against the determination for the year 1925. Petitioner alleges that it paid in that year a foreign income tax

amounting to $4,340.52 to India, and is entitled under section 238(a) of the Revenue Act of 1926 to use the same as a credit against the tax which is due the United States.

Respondent contests the right of petitioner to use such amount as a credit against its tax, upon two grounds—(1) the tax paid to India was not an income, war-profits or excess-profits tax, but was merely an excise tax paid on the purchase of raw material; (2) petitioner had no net income from sources without the United States during the taxable year and hence was not entitled to take any credit for foreign tax under the provisions of section 238(a) of the Revenue Act of 1926.

At this point we pause to say the Revenue Act of 1926 is applicable to this situation because section 286 of the Revenue Act of 1926 says that Title II of said act shall take effect as of January 1, 1925.

Petitioner is a corporation engaged in the manufacture and sale of finished leather at Philadelphia, Pa., and as a necessary incident of its business maintains an office or agency in Calcutta, India, for the purchase of goat skins for its own use and which are brought to Philadelphia, where they are manufactured into leather and there sold. No sales of the skins or manufactured product were made in India, and all of petitioner's income was derived from sources within the United States.

During the taxable year 1925 petitioner paid to India out of funds remitted by it to its agent at Calcutta, costing 0.37199253 ¢ per rupee:

| | |
|---|---|
| Rs 8876 | $3,301.80 |
| Rs 2792 5/ | 1,038.72 |
| Total | 4,340.52 |

This tax was paid under the provisions of Act No. XI of 1922, passed by the Indian Legislature, entitled "An Act to consolidate and amend the law relating to income tax and super-tax" and which was in full force and effect at the time petitioner paid the tax. This act contained provisions defining taxable income to mean: (1) income accruing, arising, or received in British India, or (2) income deemed under the provisions of the act to accrue or arise or to be received in British India.

This act was construed as imposing such a tax as that which was imposed on petitioner by the High Court of Judicature at Fort William in Bengal, in the case of *Rogers Pyatt Shellac Co.* v. *The Secretary of State for India in Council*, decided May 28, 1924. In this case, Mr. Justice Mukerji, in a concurring opinion, in speaking of the section of Act No. XI of 1922, to which reference has already been made, says:

The section is divided into two parts, the first part deals with a reality, i. e., where the income accrues or arises or is received in British India; the second

part deals with a legal fiction, i. e., where the income is deemed to accrue or arise or be received in British India. A close examination of the provisions of the Act discloses that the fiction does not purport to transform something unreal into real; the income is there, it has accrued, or arisen or been received, the fiction only fixes the place where it is to be deemed as having accrued, arisen or been received, and the fiction is resorted to in order to make some person other than the beneficiary liable.

There is no provision in the Act under which income is *deemed to be received in British India.* There is only one provision, and that is contained in section 33 (1) under which income is *deemed to accrue or arise in British India.* Reading sections 3 (1) and 33 (1) together it would appear that it is income which *really* accrues or arises or is received in British India that is liable to tax; by a fiction some kinds of income which accrues or arises *to* a person not resident of British India, is deemed to accrue or arise in British India (ignoring the aspect that it accrues or arises *to* a person outside British India) for the purpose of realising the same from an Agent resident in British India. All these kinds of income however are such as may be said to have accrued or arisen at different places in British India by reason of its having been the direct or indirect result of some business connection there or outside British India where the ultimate transactions producing the profits or gains took place—but under the Act they are deemed to have accrued or arisen in British India so as to be taxable under the Act and recoverable by making some person in British India responsible for its payment. * * *

The method of arriving at the amount of the tax against petitioner was detailed in a letter by the Indian taxing official to petitioner, in which he stated:

* * * In these circumstances of the case I am obliged to proceed u/s. 23 (3) read with Sec. 13 of the Act and to find out what percentage of profit should be deemed to accrue to British India from the purchase of these raw goods here.

The principle on which we are to proceed in such a case is to determine the average rate ruling in British India during the period of account and the average rate prevailing in Philadelphia during the corresponding period.

Enquiries at the hidemarket in Calcutta which is located chiefly in Colootola and Sealdah sections of the town place the rate of sale in Calcutta averaging between Rs. 135/- to Rs. 140/- per 100 goatskin. This rate becomes necessarily the rate of purchase with the American buyers in Calcutta, like Messrs. Burk Bros.

The American rate of purchase at Philadelphia is not easy to determine owing to fluctuations in the exchange. But enquiry at Messrs. Mouselle & Co. at Lal Bazar places this rate on average between Rs. 170/- to Rs. 175/- per 100 pieces of goatskins. The difference between these rates would thus represent the gross profit to the assessee from his purchase in India. The gross profit may accordingly be taken to be Rs. 35/- per 100 goatskin.

Against this gross profit, the average expenses per 100 goatskin may be taken as below:

| | |
|---|---|
| Freight, Custom duty, Tolls, Insurance to America &c. | Rs. 20/- |
| Establishment &c. | " 4/- |
| Preservation and Deterioration | " 7/- |
| Total | Rs. 31/- |

This makes the net profit to Rs. 35-31-Rs. 4/- per 100 goatskin, or out of a purchase of Rs. 140/- there is a net profit of Rs. 4/-. The percentage of net profit would thus be Rs. 3/- only.

I am inclined to take the net profit, so far as we are concerned, at Rs. 3% of the total purchase in India, which amounted to Rs. 31,55,925/- as per books produced. The net profit will thus be Rs. 94,677/-.

Total income_____ Rs. 94,677/-
     Tax at -/1/-
Income tax payable_____ Rs. 8,876/-
*Super Tax*
Total income_____ Rs. 94,677/-
Less free_____ Rs. 50,000/-
     Tax at -/1/-
Super tax payable_____ Rs. 2,792-5-0

Assess on a total income of Rs. 94,677/-u/s. 23 (3) read with Section 13—Income Tax Payable being Rs. 8,876/- and Super Tax payable being Rs. 2,792/5 for 1924-25.

From the foregoing facts it seems perfectly clear that the tax paid by the petitioner to India was an income tax within the meaning of section 238(a) of the Revenue Act of 1926, and it is entitled to use same as a credit against its domestic tax unless precluded from doing so by the limitations contained in said section.

The section of the 1926 Act referred to contains a proviso that the amount of such credit shall in no case exceed the same proportion of the tax against which such credit is taken, which the taxpayer's *net income from sources without the United States* (italics supplied) bears to its entire net income for the same taxable year.

Did the petitioner in the instant case have any net income within the meaning of our statute, during the taxable year, from sources without the United States? Manifestly not. It had gross sales during the taxable year of $2,075,778.61, but every dollar of such sales was within the United States. The only part of its business transacted in India was to buy its raw material there and ship it into the United States and then convert it into the finished product and sell the manufactured products here. Under such circumstances the income of petitioner was from sources within the United States and not from without. *Richard L. Birkin et al.*, 5 B. T. A. 402; *Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248; and *Tootal Broadhurst Lee Co., Ltd.*, 9 B. T. A. 321. If the taxpayer had been a nonresident alien and had bought goat skins in the United States and shipped them to India for manufacture and sale there, there would have been no income from sources within the United States. Section 217 (e) (2), Revenue Act of 1926, lays down the rule for determining the source of income of a nonresident alien, whether from sources within or without the United States. It reads:

(e) * * * (2) from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States, or pro-

duced (in whole or in part) by the taxpayer without and sold within the United States, shall be treated as derived partly from sources within and partly from sources without the United States. Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall be treated as derived entirely from sources within the country in which sold, * * *

Thus it will be seen that the rule which we have laid down for determining the source of income of a citizen of the United States in the instant case is in entire harmony with that which Congress has laid down for determining the source of income of nonresident aliens under our taxing laws.

The petitioner, as we have held, paid foreign income tax during the taxable year amounting to $4,340.52, but having no net income within the meaning of our statute from sources without the United States, it is not entitled to use same as a credit against the income-tax liability to the United States. In such a case, all that the Commissioner has authority to do is to allow the amount of foreign taxes so paid as a deduction from petitioner's gross income. *Hugh C. Wallace*, 17 B. T. A. 406; *H. I. Keen*, 15 B. T. A. 1243.

The Commissioner has already done this and in view of the fact that the only issue raised against the deficiencies asserted by the respondent was the failure of respondent to allow the foreign income tax paid as a credit against the income tax due the United States.

*Judgment will be entered under Rule 50.*