BRISKEY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60899. Promulgated February 2, 1934.

*Charles D. Hayes Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

OPINION.

ARUNDELL: From the operations of petitioner's branch house in India a profit of $55,699.52 was realized in 1929. Upon this profit a tax of $8,591.60 was asserted by the Government of India, and by reason of such tax petitioner claims a credit of $6,126.23 against its United States income tax. There is no dispute as to the figures. The controversy is whether profit from the operation of the branch in India was income from sources without the United States.

The statutory provision here involved is section 131 of the Revenue Act of 1928, which in subsection (a) allows to a domestic corporation a credit against its United States income tax for the amount of "income, war-profits, and excess-profits taxes paid or accrued * * * to any foreign country", but the amount of such credit is limited under subsection (b) to the same proportion of the United States tax which the net income "from sources without the United States" bears to the taxpayer's entire net income. There is no question as to the character of the tax imposed by the Government of India. This was levied under the same statute as the tax in *Burk Brothers*, 20 B.T.A. 657, in which case we construed the tax to be an income tax within the meaning of the credit provisions of the Revenue Act of 1926.

Whether the profit from the skins shipped by petitioner's branch was from sources without the United States depends upon whether the sales were made in India, as contended by petitioner. Counsel for respondent argues that the sales were made in the United States by petitioner's home office and that the India branch was merely a purchasing agent.

An examination of the operating methods of petitioner's branch leads us to the conclusion that the sales of skins were consummated in India. The transactions were initiated by orders given by purchasers to the home office.

It is stipulated that the India branch purchased skins to fill the orders cabled by the home office. As the petitioner did not have on hand the skins to fill the orders, the skins being acquired by the branch only after receipt of orders by the home office and transmittal to India, it follows that the acceptance of an order by the

home office did not effect a sale. It was, at the most, a contract to deliver goods. *Low* v. *Andrews*, 15 Fed. Cas. No. 8559. The earliest moment that there could be a sale under such circumstances was when the goods were acquired in India and appropriated to the contract. Sales, 55 C.J. § 28. It appears from correspondence in evidence that it was the practice of the India office to ship the skins in casks, each cask being marked in a way to be identifiable by the purchaser. Upon shipment the India office notified the home office by cable giving the name of the customer and the value of the shipment. The purpose of this was to enable the purchaser to cover the shipment by insurance and also advise it of the amount being drawn by the India office against the purchaser's letter of credit. In our opinion the sales were effected in India. It was there that the goods first came into possession of petitioner, through its branch; there that the goods were appropriated to the contract; there that the price to the purchaser was fixed. The final acts consummating the sales were performed in India, and in this respect there is a close analogy to the case of *Compania General, etc.* v. *Collector*, 279 U.S. 306. In that case negotiations for the sale of goods produced in the Philippine Islands were carried on in the United States and goods were shipped to purchasers in the United States. It was stipulated that the goods were " sold " in the United States, but the Supreme Court refused to accept that as decisive of the question presented, in view of the further stipulation that the sales were " subject to confirmation and absolute control as to price and other terms and conditions by the plaintiff's Philippine branch." While the Supreme Court did not explicitly pass on the question of where the sales were made, in view of the ambiguity of the stipulation and the failure to disclose full details of the transactions, it affirmed the lower court, which held the sales were made in the Philippine Islands. In its opinion the Supreme Court says that if " the confirmation was, in each case, given by the Philippine branch direct to the buyer, or was otherwise the final act consummating the sales within the Philippine Islands " then " the final acts of petitioner making effective the sales, which were the source of profit, took place in the Philippine Islands as an incident to and part of its business conducted there." The opinion continues:

If, in fact, the sales were thus made in the Philippine Islands, we think it unimportant whether the merchandise sold was exported before or after its sale * * *. For, in such a case, the entire transaction resulting in a profit, with the exception of negotiations in the United States preceding the sale, would have taken place in the Philippine Islands.

In the case before us, as heretofore pointed out, at the time of the negotiations in the United States the goods were not in possession of

petitioner and a completed sale could not be effected, and the final acts consummating the sales were performed in India.

The present case is unlike that of *Burk Brothers, supra,* wherein we found that the only part of the business transacted by the taxpayer in India " was to buy its raw material there and ship it into the United States and then convert it into the finished product and sell the manufactured products here." None of the skins shipped by the India branch were for its home office. Such skins as were shipped direct to the home office were for the account of others and the home office received therefrom only a commission. This case is also distinguishable from *Richard L. Birkin,* 5 B.T.A. 402; *Yokohama Ki-Ito Kwaisha, Ltd.,* 5 B.T.A. 1248; and *Tootal Broadhurst Lee Co., Ltd.,* 9 B.T.A. 321, in all of which there were actual sales in the United States from which the income in question was derived.

It is our opinion, and we so hold, that the sales of skins by petitioner's branch were consummated in India; hence the income taxed by India was from sources without the United States and petitioner is entitled to the credit claimed.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

SMITH, MURDOCK, and MCMAHON dissent.