The Exolon Company, Petitioner, *v.* Commissioner of Internal
Revenue, Respondent.

Docket No. 101276. Promulgated December 2, 1941.

*George H. B. Green, Esq.,* and *David Burstein, Esq.,* for the petitioner.

*Henry C. Clark, Esq.,* for the respondent.

OPINION.

LEECH: The parties are in agreement that the issue is determined by the answer to the question as to whether the sales of property set out in the findings were made within the United States under the provisions of section 119 (e) of the Revenue Act of 1936.[1] It is not disputed that this property was produced wholly without the United States. Respondent admits that with respect to orders specified in paragraph (2) (b) of the stipulation above the sales were made in Canada.

Respondent contends that, although the property was produced without the United States and was sold and delivered to foreign cus-

---

[1] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(e) INCOME FROM SOURCES PARTLY WITHIN AND PARTLY WITHOUT UNITED STATES.—Items of gross income, expenses, losses and deductions, other than those specified in subsections (a) and (c) of this section, shall be allocated or apportioned to sources within or without the United States, under rules and regulations prescribed by the Commissioner with the approval of the Secretary. Where items of gross income are separately allocated to sources within the United States, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States. In the case of gross income derived from sources partly within and partly without the United States, the net income may first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some items or class of gross income; and the portion of such net income attributable to sources within the United States may be determined by processes for formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary. Gains, profits, and income from—

(1) transportation or other services rendered partly within and party without the United States, or

(2) from the sale of personal property produced (in whole or in part) by the taxpayer within and sold without the United States, or produced (in whole or in part) by the taxpayer without and sold within the United States,

shall be treated as derived partly from sources within and partly from sources without the United States. Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall be treated as derived entirely from sources within the country in which sold, except that gains, profits, and income derived from the purchase of personal property within the United States and its sale within a possession of the United States or from the purchase of personal property within a possession of the United States and its sale within the United States shall be treated as derived partly from sources within and partly from sources without the United States.

tomers, the orders for the merchandise having been received and accepted in the United States, the sale must be considered as taking place there and not in Canada, notwithstanding the fact that the goods for which the order had been accepted were not yet manufactured. He argues that the place where title passed to the purchaser is not determinative of the place of sale, but is merely incidental.

We do not agree. We have consistently held that the word "sale" as used in section 119 (e), *supra*, must be considered as having its usual and customary meaning and that the place of sale is where the title to the personal property passes to the purchaser. In *East Coast Oil Co., S. A.*, 31 B. T. A. 558; affd., 85 Fed. (2d) 322, we held that, under contracts executed in this country, sales to purchasers in this country, of oil to be produced or purchased in Mexico by the seller, although payment was to be made therefor in the United States, were sales occurring in Mexico since the contracts provided for delivery to the purchasers in Mexico or c. i. f. ports in the United States on shipments from Mexico by common carrier. In that case we said:

Respondent points also to the fact that the contracts and the payments under them were made in this country, urging that here was the place of sale. Of course, the place of contract, the place of delivery and of payment, the terms of the agreement, and extraneous circumstances may each have a bearing. But the ultimate goal of the examination of all such considerations is to ascertain when and where the title to the goods passes from the seller to the buyer. It is then and there a sale is consummated—when and where property in the goods passes, when and where the incidents of ownership vest in the vendee. Such is the rule, long and firmly established.

In its opinion affirming the decision of the Board in this case the Circuit Court said:

* * * No profit resulted from the mere execution of the contracts. The oil was delivered to the buyer in Mexico. The title passed to the buyer in Mexico. When title passed the profit was earned in Mexico. Collection of the price in the United States was incidental and did not earn profit.

In our recent decision in *Ronrico Corporation*, 44 B. T. A. 1130, we reaffirmed this rule in holding that, under contracts executed in the United States by a Puerto Rican corporation for the sale of rum produced in Puerto Rico and to be shipped to purchasers in the United States, the sales occurred in Puerto Rico, where the contracts provided for delivery to the purchaser under bills of lading vesting title in him at point of shipment in Puerto Rico. See also *Hazleton Corporation*, 36 B. T. A. 908, and *Elston Co., Ltd.*, 42 B. T. A. 208.

Respondent contends that the present question is new and not controlled by our decisions in the cited cases because those involve foreign corporations, whereas the petitioner here is a domestic corporation. Respondent points to no reason nor is any apparent to

us why, in two identically similar transactions under contracts entered into at the same place for goods to be produced in a foreign country, a sale would immediately be effected if the party agreeing to sell was of foreign citizenship but would be delayed until actual transfer of title to the goods where such party was a citizen of the country in which the contract was executed. We think the issue is controlled by our decisions in the cited cases.

*Decision will be entered for the petitioner.*