Guy Livingston v. Commissioner.
Livingston v. Commissioner
Docket No. 6326.
United States Tax Court
1945 Tax Ct. Memo LEXIS 65; 4 T.C.M. (CCH) 943; T.C.M. (RIA) 45314; October 9, 1945
Milton S. Gould, Esq., for the petitioner. Thomas R. Charshee, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $5,068.60 in the income tax of the petitioner for the calendar year 1941. The petitioner for the calendar year 1941. The petitioner, a nonresident alien, contends that he was not engaged in business in the United States during 1941 as an individual but only as a member of a partnership, and the amount which he received in that year was not income from sources within the United States. He makes other contentions which need not be mentioned. Findings *66 of Fact The petitioner, an individual and a nonresident alien of the United States, filed his income tax return for 1941 with the collector of internal revenue for the third district of New York. The petitioner is a British subject. He owns a home in England. He is an officer in the British Army who "went on the reserve" prior to 1941. He had had some experience in selling and procuring arms and munitions. Daniel Wolf of Holland had also had experience in procuring such material. The petitioner and Wolf, while in England prior to 1941, entered into an agreement under which they became partners or joint venturers. (Since under section 3797, I.R.C. a joint venture is a partnership for income tax purposes, the arrangement between Wolf and the petitioner will be referred to hereafter as a partnership and the participants as partners). Their plan was to procure arms and munitions in Central and South America which they would sell to the British Government for more than they paid for them. They understood that the British Government would not accept any goods procured in the United States. The principal services to be performed by the petitioner in this undertaking *67 were to make sure that the goods under consideration were actually available and that they would be acceptable to the British Government, and to confer with representatives of the British Government to the end that the goods would be accepted. Wolf, while in London, wrote a letter to the petitioner, also in London, dated August 9, 1940, which was as follows: "Dear Sir, "I have pleasure in confirming hereby the arrangements agreed between us. "I am proceeding to the U.S.A. and other countries in America for the purpose of obtaining for the British Ministry of Supply additional material and armaments. I have associated with me in this matter a small group of friends who are also very experienced in this type of work. "It has been agreed between us that you shall act as liaison between the Ministry of Supply and me and by group, firstly in England and shortly thereafter in the U.S.A. and South America. "It is understood and agreed that you are to receive twenty per cent (20%) of the profits on these transactions. In the meantime, for the time you will act as liaison as foreseen, I will pay you or arrange for you to draw on account of your share $1.500. - per month or its English *68 equivalent, and that when you arrive in America your expenses will be paid in addition." The petitioner and Wolf came to the United States in the latter part of 1940 in order to carry on the business of the partnership. The petitioner lived in New York City during all of 1941 and devoted all of his time to the business of the partnership. Wolf also lived in New York during that period. They had an office in New York for the purpose of conducting the business of the partnership. The partnership sold goods to the British Government during 1941 at a profit. It had no other source of income except the profit thus derived. These goods were never physically in the United States. They were purchased by the partnership in countries foreign to the United States, were sold to the British Government, and paid for by the British Government outside of the United States and were shipped to the British Government outside of the United States. Wolf became ill in 1941 and subsequently died. No accounting of the profits from the partnership business was ever made. The petitioner received $2,000 a month during 1941, or $24.000 in all, which he withdrew from the funds of the partnership in accordance *69 with his agreement with Wolf. These withdrawals were on account of his share (20 per cent) of the profits of the partnership. The partnership of which the petitioner was a member had no income from sources within the United States during 1941 within the meaning of the phrase "income from sources within the United States" as used in section 119, I.R.C. The $24,000 which the petitioner withdrew from the partnership during 1941 was not income from sources within the United States. Opinion MURDOCK, Judge: Counsel for the respondent has admitted that the petitioner is a nonresident alien of the United States. A nonresident alien individual who is a partner is taxable only on income from sources within the United States. See sections 212(a) and 219. Section 3797 defines a partnership as including a joint venture. If personal property is not produced, sold, or transported in the United States, but is purchased in a foreign country, and sold at a profit in a foreign country, the gains, profits, and income resulting are not income from sources within the United States. Section 119(e). Exolon Co., 45 B.T.A. 844; East Coast Oil Co., S.A., 31 B.T.A. 558, *70 affirmed 85 Fed. (2d) 322; Ronrico Corporation, 44 B.T.A. 1130; Briskey Co., 29 B.T.A. 987, affirmed 78 Fed. (2d) 816. The only income which Wolf and his associates realized during 1941 was profit from the sale of personal property. They did not buy or sell any personal property in the United States during 1941. The personal property in which they dealt during that year was all outside of the United States, located in foreign countries, it was bought there and was sold there to a foreign country without ever having been brought within the United States. None of that income was from sources within the United States. It is thus apparent that if the petitioner was a partner, then he had no income from sources within the United States and, since a nonresident alien is taxable only on income from sources within the United States, he was not liable for any tax at all. Counsel for the respondent does not make any argument contrary to any of the statements made in the preceding paragraph. His sole argument in his brief is that petitioner was not a joint venturer with Wolf but was employed by Wolf and received the $24,000 in question as *71 salary for personal services rendered in the United States. However, in his opening statement and in his cross-examination of the petitioner, the only witness, he constantly referred to the undertaking as a joint venture between the petitioner and Wolf. The petitioner, in answer to these questions, testified repeatedly that he was a joint venturer or partner of Wolf. Also, he testified that the $24,000 was not paid to him by Wolf as salary for personal services rendered by him to Wolf but was received by him as a partner. The letter from Wolf to the petitioner dated August 9, 1940, shows that the petitioner was not to receive any salary or compensation from Wolf but was to have as his only financial reward 20 per cent of the profits of the transactions. It was also stated therein that any amount which the petitioner withdrew would be on account of his share of the profits. It must be found on this record that the petitioner was a partner within the meaning of the Code and the $24,000 was a part of his distributive share of partnership earnings. At least it can not be found that the petitioner was an employee of Wolf and received the $24,000 for personal services rendered in the United *72 States to Wolf. It is not necessary to discuss other contentions of the petitioner in view of what has been said above. Decision will be entered under Rule 50.