## APPEAL OF YOKOHAMA KI-ITO KWAISHA, LTD.

Docket No. 2653.    Promulgated January 28, 1927.

1. A letter sent by the Commissioner in 1916 to an attorney advising him that a foreign corporation was in his opinion entitled to deduct from gross income in a tax return made under the Revenue Act of 1916, such portion of the income received from sources within the United States as represents " the actual commission for buying silk in Japan," is not such an interpretation of the statute as has any binding effect upon a successor Commissioner in determining true tax liability for the fiscal year ended June 30, 1917.

2. A foreign corporation which through an agent in the United States took orders for or entered into contracts for the sale of silk in the United States and later purchased the silk in Japan to fill the orders derived income from a source within the United States, under the provisions of the Revenue Act of 1916, of the difference between the selling price and the cost and is entitled to deduct therefrom in computing net income ordinary and necessary expenses actually paid within the year out of earnings in the maintenance and operation of its business and property within the United States.

*Edmonds Putney, Esq.*, for the petitioner.
*S. D. Mitchell, Esq.*, for the Commissioner.

This is a proceeding for the redetermination of a deficiency in income and profits tax for the fiscal year ended June 30, 1917, in the amount of $24,995.95. The petitioner alleges numerous errors on the part of the Commissioner in determining its income from the sale of goods imported into the United States and in reversing the ruling of his predecessor in office in so doing.

### FINDINGS OF FACT.

The material facts are admitted in the pleadings and are substantially as follows:

The Yokohama Ki-Ito Kwaisha, Ltd., is a foreign corporation, organized under the laws of Japan, with its principal place of business at Yokohama, Japan. Its business in 1916 and 1917 was that of a dealer in raw silk and raw cotton. All of its transactions in the United States were conducted by and through the firm of Morimura, Aria & Co., who had their principal office in the City of New York and acted solely as agents for the corporation.

The transactions in raw silk between Japan and the United States were conducted substantially as follows:

Morimura, Arai & Co., in New York City, were supplied every day by the home office in Japan, by cable, with the market prices for raw silk prevailing in Yokohama on that day. On the basis of these quotations, Morimura, Arai & Co. entered into contracts for the sale of raw silk to various purchasers in the United States for delivery at a future date, frequently several months later. Each order so taken was cabled to Japan and the petitioner thereupon went into the market and purchased the silk necessary to fill the order. Sometimes the purchase would be made immediately, sometimes not until a considerably later date, according to the judgment of the officers and managers in the home office of the petitioner as to the trend of the market. Whether the petitioner made a profit or a loss on the transaction depended upon its ability to purchase the silk at a price lower than the sale price fixed in the contract.

When the petitioner in Japan shipped the silk to fill an order, it invoiced the goods to its New York agents, not at the actual purchase price paid in Japan, but at the market price quoted in its cable to New York on the day the contract was made. It then drew a draft for the invoice price upon the New York agents, to which invoices, bills of lading, and other shipping documents were attached, and negotiated the draft with a bank in Japan, thus receiving the amount of the invoice at the time of shipment. The shipping documents were either made directly in the name of the bank or indorsed to it or "to order" so that title to the silk passed to the bank. The bank in Japan forwarded the drafts with the shipping documents attached to its bank correspondent in New York by which the drafts were presented to Morimura, Arai & Co. for acceptance and payment. Upon the arrival of the silk in New York, it was stored in a warehouse in the name of the bank, pending delivery to the purchaser. Thereafter, delivery was generally made to the purchaser by Morimura, Arai & Co., acting as agent for the bank under a trust receipt signed by Morimura, Arai & Co. to the bank by the terms of which Morimura, Arai & Co. acknowledged that they received the silk in trust for the bank and that the title both to the silk and to the proceeds thereof remained in the bank.

The petitioner's transactions in cotton were conducted in a similar way, but the operation was reversed, as the cotton was purchased in the United States by Morimura, Arai & Co. and sold in Japan and elsewhere by the home office and its other branches.

In 1916 the petitioner, desiring to establish a fixed and permanent method of computing its income "from all sources within the United States" for the purpose of taxation, caused its case to be presented to the then Commissioner of Internal Revenue and requested a ruling by him of what income should be returned for the purpose of taxation. Under date of October 20, 1916 the Commissioner replied to the request in a letter addressed to the attorneys for the petitioner, which letter read in part as follows:

You further state that you desire a ruling for the future guidance of this corporation in making its returns of annual net income and set out in full the manner in which its business is transacted both in this country and in Japan. The facts as presented in connection with this business are substantially as follows:

The corporation's business consists of purchasing of raw material in Japan, which is shipped to New York and sold in this country. The agents in this country also purchase cotton here and ship it to Japan where it is sold. The representatives of the corporation in New York have daily quotations of the market prices of various kinds of silk from the office in Japan and sales are made to the customers daily on the basis of these market prices. The home office in Japan is then notified of the sales, and when it ships the silk it invoices the same to the New York agents, not at actual cost price at which

the silk was purchased, but at the market price prevailing on the day the sale was made in New York. The home office of the corporation actually draws a draft upon the agent in New York for the value of the silk reckoned at the market price prevailing on the day the sale was made in New York. This is, in effect, practically a sale by the home office to the New York office at the market price. The real profit then derived from the business in the United States is the difference between the market value of the silk on the date of sale and the price which is obtained therefor. The corporation has considered that the only income which it derives from the purchase of cotton in the United States, which is sold in Japan, is a commission for purchasing the cotton.

In reply to your question as to whether in the case of this Japanese corporation, its income received " from all sources within the United States " is to be computed upon the difference between the price at which the silk is bought in Japan and the prices at which it is sold in New York less a buying commission, or whether the income received by this Japanese corporation " from all sources within the United States " should not be limited to the difference between the price at which the silk is invoiced to the agents of the corporation in New York and the price at which they sell the same, you are informed that, for the purpose of income tax, this office is of the opinion, and will hold, that the Japanese corporation must return as income received from all sources within the United States the difference between the cost price of the silk in Japan and the price for which it is sold by its agents in New York or in this country. It will be allowed, however, to retain such portion of that income as represents the actual commission for buying the silk in Japan; that is to say, that commission will not be considered as income received from business transacted within the United States by the foreign corporation. The same procedure should obtain in the case of the cotton purchased by the agents of the foreign corporation in the United States; that is, the foreign corporation should consider that its agents in the United States are earning a commission by purchasing cotton which is disposed of in a foreign country, and such commission is considered as income " from all sources within the United States."

Since you state that the returns as rendered were prepared upon the basis insisted upon by this office, its subsequent returns should be made upon the same basis and if so made will be accepted by this office for income tax purposes.

The petitioner duly made and filed a return for its fiscal year ending June 30, 1917, as required by law, in which its income was computed strictly in accordance with the ruling of the Commissioner above quoted. The Commissioner received and accepted such return, audited same, and, with full knowledge of all of the facts, assessed the petitioner for income and profits taxes for that year upon the basis laid down by him in the ruling which was communicated to the petitioner in the letter of October 20, 1916, above quoted. Returns were also made by the petitioner upon the same basis for subsequent fiscal years and in each case the return was examined and audited with full knowledge of all the facts and the assessment made in each year upon the taxable income computed in the manner described, and the taxes assessed were duly paid by the petitioner.

During the year 1921 the then Commissioner of Internal Revenue caused the books and records of the petitioner to be examined by his agent, who verified the correctness of the facts herein stated and returned the same to the Commissioner under date of February 21, 1921, in which report he made the following statement:

The corporation's business consists of purchasing raw material in Japan which is shipped to New York and sold in this country. The agents in this country also purchased cotton here and shipped it to Japan, where it is sold. The representatives of the corporation in New York have daily quotations of the market prices of various kinds of silk from the office in Japan, and sales are made to the customers daily on the basis of these market quotations. The home office in Japan is then notified of the sales and then it ships the silk and invoices the same to the New York agents not at the actual cost price at which the silk was purchased but at the market price prevailing on the day the sale was made in New York. The home office of the corporation actually draws the draft upon the agent in New York for the value of the silk reckoned at the market price prevailing on the day the sale was made in New York. This is in fact practically a sale made by the home office to the New York office at the market price. The real profit thus derived from the business in the United States is the difference between the market value of the silk on the date of sale, and the price which is obtained therefor. The corporation has considered that the only income which it derived from the purchase of cotton in the United States which is sold in Japan is the commission for purchasing the cotton.

As a result of the above method of doing business, the company was confronted with the question of what would constitute its income from sources within the United States, inasmuch as they contend that a portion of the entire net income is contributable to the activities of its home office. They finally decided that, for income tax purposes, they should account for the difference between the cost of the raw silk bought in Japan and the amount for which it was sold in the United States as income derived from capital invested in the United States and business done in the United States, less a buying commission intended to represent that portion of the profits earned in Japan. The foregoing contentions were embodied in a letter to the Department dated October 11, 1916 (copy of which is attached). The Department in its reply to the company's attorneys, letter dated October 20, 1916 (copy attached) upheld the company's contention and the company therefore rendered its return in accordance with the reply.

The deficiency now claimed by the Commissioner to exist relates to the fiscal year July 1, 1916, to June 30, 1917, and is based upon the theory that the entire gross profit on silk shipped to and sold in the United States, that is, the difference between the price at which it was purchased in Japan and the price at which it was sold in the United States, constitutes income derived from sources within the United States, and that the petitioner is not entitled to deduct a commission for the buying of silk in Japan notwithstanding the ruling of his predecessor in office.

Relying on the ruling of the Commissioner contained in his letter of October 20, 1916, the petitioner, in keeping its books in Japan, did not segregate expenses of the business in raw silks shipped to the

United States from the expenses of its other business. The change in the form of the return made by the Commissioner in his deficiency letter dated January 20, 1925, places a great burden of expense upon the petitioner by requiring it to go back to the years 1916 and 1917 and attempt to reckon expenses of the silk business in Japan, a proceeding which has been rendered especially difficult by reason of the destruction caused by the recent earthquake in Japan. Since the return was made and prior to this deficiency claim, the petitioner suffered severe losses as a result of the period of great business disturbance and depression during the years 1920 to 1922 and also losses as a result of the earthquake in Japan.

The Commissioner computed the additional tax claimed to be due from the petitioner for the fiscal year ended June 30, 1917, as follows:

| | | |
|---|---:|---:|
| Net income shown on original return | | $302,968.58 |
| *Additions by Commissioner.* | | |
| Donations deducted by taxpayer | | 829.28 |
| Expenses of cotton purchases in U. S. deducted by taxpayer | | 15,396.50 |
| Commissions deducted by taxpayer for purchases of silk in Japan | | 271,168.98 |
| Interest | | 34,712.88 |
| | | 625,076.22 |
| *Deductions by Commissioner.* | | |
| Commissions for buying cotton in U. S. returned as income by taxpayer | $12,129.32 | |
| Additional expense | 3,267.18 | |
| Depreciation | 371.06 | |
| Additional discount | 17,765.88 | |
| Allocated salaries and additional expenses in Japan | 147,060.82 | |
| Allocated interest | 48,034.68 | |
| | | 228,628.94 |
| Net income | | 396,447.28 |

### Computation of tax.

| | | |
|---|---:|---:|
| Net income | | $396,447.28 |
| Invested capital | | 1,293,288.35 |
| Excess profits credit (9%) | | 116,395.95 |
| Excess profits tax (12 months 1917 law) | | 87,144.81 |
| $\frac{6}{12}$ x $87,224.46 (months in 1917) | | 43,572.41 |
| Net income | $396,447.28 | |
| Less: Profits tax | 43,572.41 | |
| Taxable at 2% | 352,874.87 | |
| Amount of Tax at 2% | | 7,057.50 |
| Less: Dividends | 177.00 | |
| Taxable at 4% | 352,697.87 | |
| Total tax 4% for 12 months | | 14,107.91 |
| $\frac{6}{12}$ x $14,106.32 (months in 1917) | | 7,053.96 |
| Total tax liability | | 57,683.87 |
| Total tax previously assessed | | 32,687.92 |
| Deficiency | | 24,995.95 |

The deficiency found by the Commissioner is based on a revenue agent's report dated March 30, 1921, in connection with additional information shown in the petitioner's brief to the Commissioner dated June 27, 1924. The net income as shown by the revenue agent's report was adjusted by the Commissioner by the allowance of additional discount as a result of a conference on July 29, 1924, making a total allowance of discount as shown in the petitioner's brief above referred to. The deficiency letter shows that salaries of officers, $128,026.25, was proportioned by the Commissioner, first as between gross sales of cotton over total gross sales, then as between gross sales within the United States over gross sales of silk. Salaries and incidental expenses relative to silk alone, determined by the Commissioner, $77,158.18, was proportioned on a basis of gross income within the United States and gross income silk. The total interest paid, $73,288.18, was proportioned on the basis of gross income within the United States to gross income world wide. The invested capital was proportioned on the basis of net income from sources within the United States as determined by the Commissioner and total net income world wide.

### OPINION.

LITTLETON: The principal complaint of the petitioner in this proceeding is that the Commissioner in 1925 reversed a ruling of Commissioner Osborn made in 1916 with respect to deductions which it was entitled to take in its income-tax return for the fiscal year ended June 30, 1917. The petitioner contends that the functions of a Commissioner of Internal Revenue are to some extent judicial and that his decision can not be reviewed and reversed by a successor in office, and in support of such proposition cites the case of *Bates & Guild Co.* v. *Payne*, 194 U. S. 106, wherein it is stated:

The rule upon this subject [the right of one executive officer to overrule a predecessor in office] may be summarized as follows: That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing.

It is pointed out that section 13(b) of the Revenue Act of 1916, provided that:

Every corporation * * * shall * * * render a true and accurate return of its annual net income in the manner and form to be prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, and containing such facts, data, and information as are appro-

priate and in the opinion of the commissioner necessary to determine the correctness of the net income returned and to carry out the provisions of this title.

The Act of October 3, 1917, added (section 213) :

That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all necessary regulations for carrying out the provisions of this title, and may require any corporation, partnership, or individual, subject to the provisions of this title, to furnish him with such facts, data, and information as in his judgment are necessary to collect the tax imposed by this title.

In our opinion the contention of the petitioner upon this point is sufficiently met by the decision of the court in the case of *United States* v. *Updike*, 1 Fed. (2d) 550. The letter of October 20, 1916, sent by Commissioner Osborn to the attorneys for the petitioner was not a regulation " prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury." It was advisory merely. It simply gave the inquirer the Commission's opinion and ruling as to the proper interpretation of the law as applied to the facts stated by the inquirer, which facts were not as fully stated as in the instant findings of fact. Clearly, an advisory letter on a question of law written by a Commissioner can have no binding effect upon his successor in office. An erroneous interpretation of a statute by the Commissioner does not conclude the United States on a subsequent modification of the ruling or create equities in favor of the petitioner requiring the judicial adoption of the first interpretation. *Goldfield Consolidated Mines Co.* v. *Scott*, 247 U. S. 126.

A further contention made by the petitioner is that the profit on silk shipped by it to the United States from Japan accrued in Japan and not in the United States and that the petitioner did not have any taxable income derived from sources within the United States. A consideration of this question requires a determination of the meaning of the phrase " from all sources within the United States," contained in section 10 and in section 12 (b) of the Revenue Act of 1916. We think that where a foreign corporation sells goods at a profit in the United States it derives an income from a source within the United States within the meaning of the statute. We have held that where goods are manufactured abroad by nonresident alien individuals and sold in this country, the entire profit constitutes " gross income from sources within the United States " within the meaning of section 213 (c) of the Revenue Act of 1918. *Birkin* v. *Commissioner*, 5 B. T. A. 402. We think that a like ruling must be made under the Revenue Act of 1916 with respect to a foreign corporation purchasing goods outside of the United States and selling them within the United States. The purchase price is paid by an indi-

vidual residing in the United States. The income of the seller is derived from the sale and flows to the seller from the purchaser.

The petitioner objects to the tax liability determined by the Commissioner as computed upon the entire profit derived from silk shipped to the United States, that is, upon the difference between the cost of the silk in Japan and the sale price fixed in the contract of sale made in the United States. Its contention is that in the ordinary transaction of purchase and sale of personal property where the purchase precedes the sale no profit is made until the property is sold; that under such circumstances it might justly be said that the profit or income was derived from the place in which the sale was made; but that that would not be true in the instant case since the petitioner sold goods which it did not own and therefore derived no profit at the time of the sale; that it required a subsequent purchase to consummate the transaction; that whether the petitioner obtained a profit at all or suffered a loss depended entirely upon the skill and judgment with which the purchase was made; that any profit, if profit there was, accrued at the time of the purchase and not at the time of the sale and that, inasmuch as the purchase was in Japan, the profit was realized in Japan.

The evidence upon this point is not as detailed as might be desired. The agent of the petitioner in the United States took orders for silk or entered into contracts for the sale of silk. No copies of the contracts are before us. Neither are we in possession of copies of the shipping documents which might have a bearing upon the case. We can see no basis, however, for the contention of the petitioner that the profit on the sale is not derived from a source within the United States merely because the date of sale precedes the date of purchase. The source of the income was not changed by reason of that fact.

The relationship of the petitioner to Morimura, Arai & Co. is not entirely clear. This concern was apparently a partnership with its principal office in New York City, which acted solely as agents for the corporation. The conditions under which they acted and the method under which the petitioner compensated them for services rendered are not revealed. There appears to be no question, however, but that they were transacting business in the United States in the name of the petitioner. *Laurentide Co.* v. *Durey*, 231 Fed. 223.

The petitioner alleges error on the part of the Commissioner in refusing to allow the deduction of $271,168.93 made by the petitioner in its return and representing commissions in Japan for the buying of the silk pursuant to the ruling of the former Commissioner of Internal Revenue. In place of such deduction the Commissioner has allowed the deduction of a portion of the actual expenses of the

business in Japan. No evidence is before this Board that the petitioner paid any commissions in Japan for the purchase of silk. In the absence of such evidence the disallowance of the deduction by the Commissioner must be approved.

The petitioner also alleges error on the part of the Commissioner in refusing to allow the deduction of $16,950 discount made by the petitioner in its return. The record contains no evidence upon this point. The deficiency letter would indicate that the Commissioner allowed the deduction of all the discount which the petitioner contended for when the audit of its tax return was under consideration by the Commissioner prior to the determination of the deficiency. In the absence of evidence the action of the Commissioner in disallowing this deduction must be likewise approved.

The petitioner further alleges error on the part of the Commissioner in refusing to allow the deduction of $15,396.50 expenses of the petitioner in the conduct of its cotton business in the United States. The Commissioner has apparently determined the deductions from gross income in accordance with the provisions of law applicable to returns made under the Revenue Act of 1918. The Revenue Act of 1916 is quite different from the Revenue Act of 1918 in this respect, since it permits a foreign corporation deriving income from sources within the United States to deduct from gross income:

First. All the ordinary and necessary expenses actually paid within the year out of earnings in the maintenance and operation of its business and property within the United States, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. (Sec. 12(b).)

Since commissions for the purchase of cotton were paid in connection with the operation of the petitioner's business within the United States, they are deductible from gross income under the express provisions of law applicable to returns under the Revenue Act of 1916.

The last issue presented by the petitioner is whether the Commissioner erred in computing the 4 per cent tax imposed by section 4 of the Revenue Act of 1917 upon one-half of the net income for the fiscal year ended June 30, 1917, after deducting therefrom the profits tax imposed by the Revenue Act of 1917 instead of upon the 1917 portion of the net income reduced by the profits tax.

Counsel for petitioner in support of this point cites and relies upon the decision of the Circuit Court of Appeals, Third Circuit, in *United States* v. *Semple*, 10 Fed. (2d) 1023, affirming the decision of the District Court in *Semple* v. *United States*, 7 Fed. (2d) 1023, decided upon that court's decision in *Semple* v. *Lewellyn*, 1 Fed.

(2d) 745, in which it was held that only that portion of the income earned during that portion of the calendar year 1917 falling within the fiscal year was subject to the 4 per cent tax, and insists that the Board should overrule its decision in the *Appeal of F. J. Thompson, Inc.*, 1 B. T. A. 535, and the decisions in the *Appeals of Mesa Milling Co.*, 2 B. T. A. 770; *Phoenix Seed & Feed Co.*, 2 B. T. A. 909; *St. Louis Screw Co.*, 2 B. T. A. 649; *Bray & Kates Co.*, 3 B. T. A. 1316; and *Manville Jenckes Co.*, 4 B. T. A. 765, in which the decision in the *Appeal of F. J. Thompson, Inc.*, was followed.

In the decision of the Board in the *Appeal of F. J. Thompson, Inc., supra*, the decision of the District Court in *Semple* v. *Lewellyn, supra*, was considered and analyzed with the utmost care and a different conclusion from that arrived at by the learned court was not lightly reached. In the *Appeal of Mesa Milling Co., supra*, in which the Board was asked to overrule its decision in the *F. J. Thompson, Inc.*, appeal, it was said.

We have carefully reconsidered the decision in that appeal in the light of the arguments of counsel for the taxpayer. The rule laid down in the Act for the treatment of the excess-profits tax credit seems to us to be clear, and does not call upon us to interpret the congressional intention for the purpose of determining that Congress meant that the credit should be treated or tax computed otherwise than as provided in the Act.

In the present proceeding we have carefully reconsidered our decision on this question in the light of the argument of counsel, and we have carefully studied and considered the decisions of the courts in the cases of *United States* v. *Semple, supra; Curtis & Co. Mfg. Co.* v. *United States*, 62 Ct. Cls. 115; 5 Am. Fed. Tax Rep. 6025, and, also, the *per curiam* opinion of the Circuit Court of Appeals for the Second Circuit in *Bowers* v. *Carl Schoen Silk Corporation*, 16 Fed. (2d) 1014, but notwithstanding our great respect for and deference to the opinions of these courts, we are not persuaded that our conclusion as announced in former decisions is erroneous. The opinion of the Circuit Court of Appeals for the Second Circuit in *Bowers* v. *Carl Schoen Silk Corporation, supra*, was as follows:

We see no reason to depart from. the result of decisions already made. See *United States* v. *Semple*, 10 Fed. (2d) 1023; *Curtis, etc.* v. *United States*, Court of Claims No. 83, October Term, 1926.

There is no indication in any of the cases dealing with this question that the court had before it the Board's decision in the *F. J. Thompson, Inc.*, appeal, or the reasoning upon which it was based.

*Judgment will be entered on 15 days' notice, under Rule 50.*

PHILLIPS concurs in the result only.

SMITH, dissenting: I dissent on the last point. The question presented is whether the excess-profits-tax credit provided for by section 29 of the Revenue Act of 1916, added by section 1211 of the Revenue Act of 1917, should be credited against the net income for the entire fiscal year ending in 1917 or against only the 1917 portion of the net income in determining the amount of the net income subject to the additional 4 per cent income tax imposed by section 4 of the Revenue Act of 1917. As I see it, the 4 per cent tax was never intended to be imposed upon any part of the net income of a corporation received or accrued prior to January 1, 1917; and it was never intended to be imposed upon the 1917 income until after such income had been credited with the excess-profits tax payable upon the same income. Clearly, if this taxpayer had made its returns on a calendar year basis, the entire excess-profits tax payable for 1917 would have been credited against 1917 income and only the remainder would have been subjected to the 4 per cent tax. Should this taxpayer be prejudiced by reason of the fact that it made its tax returns on a fiscal year basis? Section 29 of the Revenue Act of 1916, as amended, does not necessarily require the credit of the excess-profits tax against the net income of the entire fiscal year, and such a method of crediting it is not in harmony with the scheme of the statute. Such a construction of the statute was made by this Board in *Appeal of F. J. Thompson, Inc.,* 1 B. T. A. 535, and followed in other decisions. In such decisions the Board violated a cardinal rule of statutory construction, namely, that doubts with respect to the meaning of language used in taxing statutes should be resolved in favor of the taxpayer. *United States* v. *Wigglesworth,* 2 Story, 369; Fed. Cas. No. 16,690; *Gould* v. *Gould,* 245 U. S. 151.

Furthermore, the identical question involved in this proceeding was before the courts in the case of *Semple* v. *United States,* 7 Fed. (2d) 1023; *United States* v. *Semple,* (C. C. A.) 10 Fed. (2d) 1023. The Supreme Court denied certiorari in this case on October 11, 1926. It is also to be noted that the Circuit Court of Appeals, Second Circuit, to which an appeal lies in this case, has decided the point in favor of the taxpayer. *Bowers* v. *Carl Schoen Silk Corporation,* 16 Fed. (2d) 1014.