EVELYN N. MOORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102496. Promulgated November 12, 1942.

*Courtland Kelsey, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner has determined that the petitioner is liable as a transferee of property of Edward S. Moore for gift taxes for the calendar year 1935 in the amount of $104,864.73, plus interest, on gifts made by Edward S. Moore to this petitioner in 1935. The facts have been stipulated and will be stated herein only to the extent necessary for an understanding of the issues.

Edward S. Moore, the husband of this petitioner, made gifts to her in 1935 of securities having a total value of $415,500. He filed a gift tax return with the collector of internal revenue for the district of Wyoming on March 11, 1936, reporting those gifts and he paid the tax shown on the return. The Commissioner never determined any deficiency in gift taxes for 1935 against Moore, although the latter has been financially able at all times to satisfy all gift tax liability due from him. The deficiency which the Commissioner is attempting to collect from the present petitioner has never been paid. The three-

year statutory period for determining any deficiency against Moore expired on March 11, 1939, whereas the notice of liability to the present petitioner was mailed on February 20, 1940. The Commissioner, in determining the deficiency, made no change in gifts for 1935, but he increased gifts for prior years, thereby subjecting the 1935 gifts to higher rates of tax.

The petitioner points out that the donor was at all times solvent and able to pay all that was due from him, but the Commissioner failed to pursue his remedies against the donor within the time allowed by the statute. She, therefore, contends that there is no basis for holding her liable as a transferee, and even if she ever was liable as a transferee, that liability was conterminous with the liability of the donor and ceased when the statutory period for collection against him expired. This argument is based upon the erroneous assumption that the transferee liability which the Commissioner is asserting is based upon some equitable ground, sometimes described as the "trust fund" theory of transferee liability. But the Commissioner does not rely upon any equitable principles to show that this petitioner is liable as a transferee. Instead, he relies upon the following express statutory provision which is found in section 510 of the Revenue Act of 1932:

LIEN FOR TAX.

The tax imposed by this title shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. * * *

The above provision does not require, as a condition precedent to personal liability on the part of the donee, that the Commissioner first pursue his remedy against the donor, or that the gift itself render the donor insolvent and unable to pay the tax. Nor is there any provision that the personal liability of the donee shall cease when the statute of limitations has expired for the collection of tax from the donor. The statute, instead, allows the Commissioner to follow the property given. Section 526 (f) provides: "As used in this section, the term 'transferee' includes donee * * *." Another provision of the statute imposes upon the Commissioner the burden of proof to show that a transferee is liable for the tax. The Commissioner has fully met that burden in this case. The stipulation clearly shows that the petitioner was a donee of the taxpayer and the value of the gift received by her in 1935 was far in excess of the amount of tax here involved.

Section 526 (f), in defining "transferee" as including "donee," made applicable for the collection of the amount of this donee liability the statutory process for collection in the case of general transferee liability. The period of limitation applicable to a transferee thereby became applicable in the case of the donee. That period, as set forth

in section 526 (b), is "Within one year after the expiration of the period of limitation for assessment against the donor." Here the notice of transferee liability was mailed within that period and collection is not barred. Not only is there no statutory support for the petitioner's contention that her liability ceased when the statute ran against collection from the donor, but the statute clearly indicates that no such exception was intended. It is not for this Court to reason why Congress gave this extra year for assessment and collection against the donee, or to determine whether or not that was done inadvertently. It is enough that the Commissioner has been given this extra year by the clear provisions of the statute.

The deficiency, as explained above, resulted indirectly from an increase in gifts for prior years. Edward S. Moore had created three trusts in 1924 for the benefit of his three children. He made some additions to the trusts in 1925. He made timely reports of those gifts for gift tax purposes. He reserved to himself in those trust instruments certain powers over the income and corpus. He surrendered all of those reserved powers in 1934. The Commissioner, in determining the deficiency, held that the income of the trusts from the date of the enactment of the gift tax act in 1932 until the time of the relinquishment of the powers in 1934, and the fair market value of the securities comprising the three trusts at the time of the relinquishment of the powers, were gifts in 1932, 1933, and 1934.

The petitioner makes an alternative contention that there was no gift in 1934 of the then value of the corpus of the three trusts, but she concedes that this Court is bound to reach a contrary conclusion on this point on authority of *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, and *Rasquin* v. *Humphreys*, 308 U. S. 54.

These two cases hold that a gift, to be subject to the gift tax, must be complete, and a transfer in trust with retained powers of control is not a completed gift until those powers are relinquished. Thus, Moore's gifts to the three trusts were incomplete in the earlier years when he reported them, and the Commissioner was right in treating them as completed in 1934 when he (Moore) surrendered his powers of control and when values, apparently, were greater. The two cases were not decided until after the period for assessment against the donor had expired, and that fact may explain the failure of the Commissioner to proceed against the donor. They were decided before it was too late to proceed against the donee.

She also makes the further alternative contention that there was no gift of the income of the three trusts in 1932, 1933, or 1934, but the Board at another docket number has held to the contrary upon the authority of *Leonard A. Yerkes*, 47 B. T. A. 431.

Reviewed by the Court.

*Decision will be entered for the respondent.*

MELLOTT, *J.*, dissenting: The parties have stipulated that the donor "has at all times been financially able to satisfy all gift tax liabilities with respect to the gifts" made by him, together with interest and penalties.   Inferentially it appears that the Commissioner refrained from attempting to collect the additional tax from him because of uncertainty whether the value of the corpus of a trust, created in 1924 for the benefit of his children, together with accumulated income, should be included in gifts made by him in 1934 when he relinquished the power to alter and amend.   (Note the contentions of the Government in *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, and *Rasquin* v. *Humphreys*, 308 U. S. 54.)   It is clear, however, that at least as early as November 16, 1938, the Commissioner knew all of the facts; for on that date and before expiration of the time within which a deficiency in gift tax could have been determined against Moore, respondent sent him a notice of deficiency in income tax for 1934, stating:

* * * it appears that you retained a controlling interest in the corpus [of trusts created for the children] and could do as you pleased with it up to October 18, 1934, when you amended the original deeds and thereby relinquished your right to revest * * *.

These facts are pointed out to show that there was no "liability, as a transferee, in equity" of this petitioner for the tax presently in issue.   She recognizes, and the respondent's argument makes it perfectly plain, that he is attempting to hold her as a transferee, for a "liability at law."   The issue therefore is the narrow one:   Has respondent sustained his burden of proving that the liability asserted against petitioner is a "liability, at law   * * *, of a transferee of property of a donor"?   I think not.

The transferee provisions of the revenue act were enacted for the purpose of providing a comparatively summary proceeding for the collection of income taxes,[1] estate taxes,[2] and gift taxes.[3]   *Hulburd* v. *Commissioner*, 296 U. S. 300.   The remedy was "in addition to proceedings to enforce the tax lien or actions at law and in equity." *Phillips* v. *Commissioner*, 283 U. S. 589.   No new liability was created.[4]   Cf. *A. H. Graves*, 12 B. T. A. 124; *John Robert Brewer*, 17 B. T. A. 713 (appeal, C. C. A., 5th Cir., dismissed).   In other words, the secondary liability of a transferee (*Oswego Falls Corporation* v. *Commissioner*, 71 Fed. (2d) 673; *Florence McCall*, 26 B. T. A.

[1] Sec. 280, Revenue Act of 1926; sec. 311, Revenue Act of 1928 and subsequent acts; sec. 311, Internal Revenue Code.

[2] Sec. 316, Revenue Act of 1926 as amended by sections 402 and 403 of the Revenue Act of 1928; sec. 900, Internal Revenue Code.

[3] Sec. 526, Revenue Act of 1932; sec. 1025 Internal Revenue Code.

[4] In the report of the Committee on finance of the Senate (Rept. No. 52, 69th Cong., first sess., it is stated: "It is not proposed * * * to define or change existing liability. The section [280] merely provides that if the liability of the transferee exists under other law then that liability is to be enforced according to the new procedure applicable to tax deficiencies."

292) is to be determined by applying the principles which would be applied in a District Court if a proceeding were instituted—as it could be (*Baumgartner* v. *Commissioner*, 51 Fed. (2d) 472; certiorari denied, 284 U. S. 674)—to enforce a "liability at law or in equity."

Respondent tacitly admits that the stipulated facts absolve petitioner from any liability in equity, so this need be given no further consideration. (*Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *Bell* v. *Commissioner*, 82 Fed. (2d) 499; *Samuel Keller*, 21 B. T. A. 84; affd., 59 Fed. (2d) 499; *Helen Dean Wright*, 28 B. T. A. 543; *Annie Troll*, 33 B. T. A. 598; and *Alex Harjo*, 34 B. T. A. 467.) Would he be on firmer ground if he had instituted a court action to enforce an alleged liability at law? I think not. If the action were to hold her upon an alleged liability as a donee under section 510, set out in the opinion of the majority, the statute of limitations [5] could be successfully interposed as a defense; for the liability of a donee is "imposed by Title III," the same as the liability of a donor. If the action were to enforce a secondary liability for the donor's tax the additional defense could be made that the donor's liability had been extinguished by section 607 of the Revenue Act of 1928 [6] (which is substantially the same as section 3770 (a) (2) of the Internal Revenue Code). *Commissioner* v. *Northern Coal Co.*, 62 Fed. (2d) 742; affirmed per curiam by an equally divided court, 280 U. S. 591; *Helvering* v. *Newport Co.*, 291 U. S. 485. *Stange* v. *United States*, 282 U. S. 270, cited by respondent, does not support his contention that the donor's liability survived the running of the statute. That case dealt only with the validity of a waiver, signed by the taxpayer after the statute had run, and section 607, *supra*, was not considered. As a matter of fact it had no pertinency; for the waiver, involving 1914 income taxes, had been signed in November 1922.

It is clear that on February 20, 1940, there was no "liability at law or in equity," which could have been enforced against this petitioner in a court proceeding, as a transferee of the property of her donor. Unless subsection 526 (f) has the effect of making her liable, as a transferee, merely because of the fact that she is a donee, respondent's determination, in my judgment, should not be upheld. Did it have such an effect? I think not.

---

[5] SEC. 517. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as provided in subsection (b), [exceptions not applicable] the amount of taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed.

[6] 607. EFFECT OF EXPIRATION OF PERIOD LIMITATION AGAINST UNITED STATES.

Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim.

The majority seem to construe section 526 (f) as giving the Commissioner an "extra year for assessment and collection against the donee" because "the term 'transferee' includes donee, heir, legatee, devisee and distributee." If the statute provided that every donee, heir, etc., were *ipso facto* liable for the tax of his donor, ancestor, etc., its validity would be subject to substantial doubt; for no one should be held for the tax of another except upon legal or equitable principles. Yet that seems to be the effect of the construction given to the section by the majority. They, in effect, construe the word "includes" as being synonymous with "means." In my opinion it is used as the equivalent of "comprehends" or "embraces." Cf. *Helvering* v. *Morgan's, Inc.*, 293 U. S. 121, and note; *Tootal Broadhurst Lee Co., Ltd.*, 9 B. T. A. 321; affd., 30 Fed. (2d) 239; certiorari denied, 279 U. S. 861. The subsection, like a similar provision in the Estate Tax Act (sec. 900 (e), Internal Revenue Code) was for the purpose of removing any doubt as to the inclusion of the enumerated classes.[7] So construed, the section authorizes the Commissioner to proceed against any donee, heir, legatee, devisee, or distributee of the donor or against any other person shown to be a transferee of his property, whether the particular gift, or some later gift, had made him insolvent. If Congress had desired to limit the liability of a donee-transferee to the gift made to him or if it had intended to give the Commissioner the right to proceed against the donee of the gift within four years from the time the donor's return was due, it could very easily have done so. It would not have adopted the circuitous method of creating a personal obligation for the tax, providing for a three-year period in which it is to be assessed, and then, merely by "including" a donee within the definition of a transferee, expect that the transferee section should be construed as if it provided for the assessment of a liability against the recipient of the property even though he had not assumed the tax and thereby become liable at law and even though no circumstances are shown, which would make him liable in equity.

---

[7] § 13.50 Paul, Federal Estate and Gift Taxation; Paul, Studies in Federal Taxation, 3d ser., p. 26, n. 84.