MELBA SCHUSTER, FORMERLY MELBA D. BAKER, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65075.    Filed July 31, 1959.

*Walter C. Fox, Jr., Esq.,* and *Robert E. Senghas, Esq.,* for the petitioner.

*Nat F. Richardson, Esq.,* for the respondent.

ARUNDELL, *Judge:* Respondent determined for assessment against petitioner the amount of $49,698.63, plus interest as provided by law, as constituting petitioner's liability as a transferee of property of the estate of William P. Baker, deceased. Petitioner contests the entire determination. Errors have been assigned from (a) to (t). The assignments are grouped and summarized as follows:

1. Respondent erroneously included in the decedent's gross estate the undistributed corpus of an inter vivos trust dated September 12, 1941;

2. Respondent's determination is barred by the statute of limitations;

3. Respondent erred in not being bound by the determination of his predecessor in office of the tax liability of decedent's estate;

4. That since the estate has not been distributed, is solvent, and has ample marketable assets, respondent erred in determining petitioner liable as a transferee and in so doing violated the fifth amendment of the Constitution; and

5. Respondent erred in failing to allow the family allowance ordered by the California court as a part of the marital deduction from the decedent's gross estate.

Respondent in his brief concedes that petitioner's transferee liability is $48,306.63 instead of $49,698.63 which is due to an additional credit for Federal gift taxes for the difference.

### FINDINGS OF FACT.

The stipulation of facts, together with the attached exhibits, is found as stipulated and is incorporated herein by reference.

William P. Baker (hereinafter referred to as the decedent) died July 11, 1951, and his will was admitted to probate in the Superior Court of the State of California in and for the city and county of San Francisco on August 16, 1951. Petitioner was duly appointed the executrix of the will, and has been and now is the duly qualified and acting executrix thereof (hereinafter referred to as the executrix) and of all the matters and affairs affecting the probate of his estate.

The decedent left a will under which he bequeathed and devised the property subject to his testamentary disposition as follows:

A. Miscellaneous personal property (valued herein at $2,822) to his surviving wife, Melba Baker;

B. $5,000 to his niece, Martha Wolpert;

C. $5,000 to his sister, Liesel Papkalla; and

D. The residue in trust with the income payable to his surviving wife, Melba Baker, for life, and the remainder over to the children of his daughter, Patricia B. Englert.

The above disposes of the whole of the probate estate of the decedent, viz, all of the property subject to his power of testamentary disposition. The remainder of the property which comprises all of the marital deduction allowed, except $2,822, was drawn into the estate pursuant to the statutory provisions of section 811(c), (e), and (g) of the Internal Revenue Code of 1939.[1]

On October 7, 1952, in accordance with, under, and within the time required by chapter 3 of said Code, the executrix filed a return in duplicate on Form 706 setting forth the matters prescribed in Code section 821. In the return the executrix reported a gross estate made up as set forth in the following prescribed schedules (with reference to Code sections):

| | | |
|---|---:|---:|
| Schedule A—Real Property (Required under sec. 811(a)) | | $10,000.00 |
| Schedule B—Stocks and Bonds (Required under sec. 811(a)) | | 650,452.00 |
| Schedule D—Insurance (Required under sec. 811(g)) | | 44,234.00 |
| Schedule E—Jointly-owned Property (Required under sec. 811(e)) | | 303,099.59 |
| Schedule F—Miscellaneous Property, Personal Property and Receivables (Required under sec. 811(a)) | $6,207.08 | |
| Partnership Property (Required under sec. 811(e)) | 45,000.00 | |
| | | 51,207.08 |
| Schedule G—Transfers during decedent's lifetime reported as nontaxable—Living Trust of 9–12–41; transfers to petitioner on Feb. 10, 1951, (note valued at $10,000) | | None |
| Total gross estate | | $1,058,992.67 |

In said return the executrix claimed deductions under section 812(b) of $83,832.08, and under section 812(e) a marital deduction of $466,570.18, and reported a net estate of $408,590.41 for the basic tax and $448,590.41 for the additional tax; and paid a tax thereon to the collector of internal revenue on October 7, 1952, $116,177.18 being the total tax disclosed in and by said return.

Attached to and as a part of said return, the executrix included therein a trust agreement dated September 12, 1941, between the decedent and the San Francisco Bank as trustee (hereinafter sometimes called the living trust) for the use and benefit of Patricia Englert, the daughter of decedent, and her heirs. The executrix reported said living trust without value for purposes of said tax.

During the tenure in office of T. Coleman Andrews as Commissioner of Internal Revenue of the United States, and under his direction and

---

[1] All references to Code chapter and section numbers herein are of the Internal Revenue Code of 1939 unless otherwise designated.

instructions, an audit of the estate of decedent was made in accordance with the provisions of Code section 824, and as a result of said audit he determined the gross estate to be as follows:

| | |
|---|---:|
| Schedule A—Real Estate | $10, 000. 00 |
| Schedule B—Stocks and Bonds | 838, 717. 00 |
| Schedule D—Insurance | 44, 234. 00 |
| Schedule E—Jointly-owned Property | 303, 099. 59 |
| Schedule F—Other Miscellaneous Property | 51, 207. 08 |
| Schedule G—Transfers during decedent's lifetime (said note to petitioner) | 10, 000. 00 |
| | $1, 257, 257. 67 |

and allowed deductions of $579,372.33, inclusive of a marital deduction of $405,155.59; determined the net estate to be $677,885.34 (exclusive of the specific exemptions of $100,000 for the basic tax and $60,000 for the additional tax) and he determined and imposed as a deficiency under section 871 an additional tax of $50,939.14, which he assessed on September 8, 1955, and which was paid to said collector by the executrix on October 3, 1955. The living trust of September 12, 1941, was determined by said Commissioner to be nontaxable.

Commissioner Andrews did not, on or prior to October 7, 1955, or at any other time, issue any notice of deficiency to the estate or to the executrix thereof for any tax under chapter 3, except as stated above; nor did Commissioner Andrews at any time commence or cause to be commenced any suit or proceeding in court for the imposition or collection of any tax under chapter 3 from or against the estate or the executrix thereof at any time.

The period prescribed for the imposition of tax upon the estate under chapter 3 expired 3 years after October 7, 1952, the date the return was filed, as specifically provided in section 874(a), and prior to October 7, 1955, all tax under said chapter assessed upon the transfer of the net estate of decedent had been fully paid and discharged in and by such payments.

The marital deduction allowed in the computation of the net estate was $405,155.59, comprised of the following property:

| | |
|---|---:|
| Schedule D—Insurance (included pursuant to the requirements of sec. 811(g)) | $44, 234. 00 |
| Schedule E—Jointly-owned property (included pursuant to the requirements of sec. 811(e)) | 303, 099. 59 |
| Schedule F—Other miscellaneous property, included as follows: | |
| Personal property bequeathed to petitioner but not yet distributed (subject to sec. 811(a)) | 2, 822. 00 |
| Partnership property as above stated (included pursuant to sec. 811(e)) | 45, 000. 00 |
| Transfers during decedent's lifetime (included pursuant to the requirements of sec. 811(c)) | 10, 000. 00 |
| | $405, 155. 59 |

All of the property of petitioner particularly referred to and set forth in said Schedules D, E, and F (except said $2,822) above was acquired by virtue of estates created and other contractual relationships entered into between decedent and petitioner prior to his death; the interest, if any, of decedent in any of said property terminated upon his death; and the rights and estates of petitioner in and to all of said property are and were supported by consideration under the laws of the applicable jurisdiction, to wit, the State of California.

Said executrix, under and subject to the jurisdiction of the Superior Court, is now, and at all times since her appointment as such executrix has been, in possession and control of all of the property subject to testate or intestate disposition by the decedent, and none of said property has been distributed to any legatee or devisee of said decedent except two specific bequests in cash to third parties aggregating $10,000, distributed by said executrix pursuant to order duly given and made by the Superior Court, and at all times since the date of death of the decedent and now the market value of the property in said estate and in the hands of the executrix thereof has been and is in excess of $700,000.

On April 18, 1958, the Superior Court, by order duly given and made, ordered that the list of assets in said estate as set forth in Exhibit B [2] is full, true, and correct in all respects and sets forth all of the assets of said estate chargeable against said executrix.

Eleven months after the expiration of the period for the imposition of any tax upon the estate or otherwise under chapter 3 of said Code, viz, on September 6, 1956, the then Commissioner of Internal Revenue, Russell C. Harrington, successor to Andrews, made a further examination of the estate and asserted a liability against the petitioner, as transferee, which is the subject matter of this petition. The deficiency so asserted by Commissioner Harrington added to the gross estate and likewise to the net estate as so determined by his predecessor, Commissioner Andrews, $162,000 as his claimed value of the undistributed corpus of the living trust hereinabove referred to. The gross estate so redetermined by Commissioner Harrington aggregated $1,419,257.67, and deductions totaling $579,372.33 as allowed by his predecessor were allowed by him resulting in a net estate for the basic tax of $739,885.34 and for the additional tax of $779,885.34. Commissioner Harrington redetermined a total overall estate tax liability of $216,814.95, of which $167,116.32 had been paid on or prior to October 7, 1955, and the balance, $49,698.63,[3] remains unpaid and is represented by the asserted transferee liability which is the subject matter of the petition herein. In such redetermination by Commis-

[2] Attached to the stipulation of facts as Exhibit B.

[3] Less an additional credit for Federal gift taxes of $1,392 conceded by respondent in his brief.

sioner Harrington, he adopted and used the same marital deduction as used by his predecessor, namely, $405,155.59.

OPINION.

The contested liability determined for assessment against petitioner results from the determination of Commissioner Harrington that the undistributed corpus of the living trust in the amount of $162,000 should be included in the decedent's gross estate under section 811(d).[4] Of course, if no part of the corpus were includible, there would be no liability. Although petitioner assigned errors to that effect, she did not argue the point in her briefs except to say that the burden of proof was upon the respondent to show that the trust was includible.

The facts as to this trust were fully stipulated and are not in dispute. A copy of the trust agreement was attached to the stipulation of facts as Exhibit A. Subdivision *Fifth* of the trust agreement provided in part as follows:

*Fifth:* After said Patricia Marie Baker has attained the age of twenty-one years, the Trustor may, while he is living during the trust term, but only with the written consent of said Patricia Marie Baker, revoke the trust hereby created, or may change or modify this agreement in any manner approved in writing by the Trustee, by instrument in writing duly executed and acknowledged by the Trustor and delivered to the Trustee. * * *

At the time of the decedent's death, one-half of the trust corpus had been distributed but decedent could have revoked trust as to the other one-half with the written consent of Patricia. Commissioner Harrington did not err in including the undistributed one-half in the decedent's gross estate under the plain provisions of section 811(d). *Helvering* v. *City Bank Farmers Trust Co.*, 296 U.S. 85 (1935), rehearing denied 56 S. Ct. 303; *Van Beuren* v. *McLoughlin*, 262 F. 2d 315 (C.A. 1, 1958). On this aspect of the case we sustain the respondent's determination.

Petitioner strongly contends that under section 874(a) [5] the respond-

---

[4] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

    *        *        *        *        *        *

(d) REVOCABLE TRANSFERS.—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

[5] SEC. 874. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as provided in subsection (b) the amount of estate taxes imposed by this subchapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed.

ent's determination is barred by the statute of limitations. The facts show that the return was filed on October 7, 1952, and that the notice to petitioner of her liability was not mailed until September 6, 1956, which was more than 3 years but less than 4 years from the time the return was filed. The respondent concedes that after October 7, 1955, he was barred by section 874(a) from proceeding against the executrix but claims that under section 900(b) (1)[6] he had an extra year to proceed against "transferee" as that term is used in section 900(a) (1)[7] and defined in section 900(e).[8] As will appear later in this Opinion we are holding that under section 827(b)[9] petitioner is personally liable for the tax in question. The wording of section 900 (e) and (b), *supra*, makes it clear that any person mentioned in section 827(b) as being personally liable for the unpaid tax is a transferee and that the Commissioner has a 1-year additional period during which he may assert liability for such unpaid tax against one or more transferees. In reading section 827(b) and section 900 (b) and (e) together, the courts have held in estate and gift tax[10] cases that it is immaterial whether or not the Commissioner asserts liability against the executor or donor within the 3-year statute of limitations period and that he may assert liability against the transferee so long as he does so within the 4-year period. *Catharine D. Sharpe*, 38 B.T.A. 502, 517, affd. 107 F. 2d 13, 16 (C.A. 3, 1939), certiorari denied 309 U.S. 665 (1940); *Evelyn N. Moore*, 1 T.C. 14, affd. 146 F. 2d 824 (C.A. 2, 1945); *Fred J. LaFortune*, 29 T.C. 479, affd. 263 F. 2d 186 (C.A. 10, 1958). We hold, therefore, that the respondent's determination herein is not barred by the statute of limitations.

---

[6] SEC. 900. TRANSFERRED ASSETS.

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the executor.

[7] (a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this subchapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a decedent, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this subchapter.

[8] (e) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee, *and includes a person who, under section 827(b), is personally liable for any part of the tax.* [Emphasis supplied.]

[9] SEC. 827. LIEN FOR TAX.

(b) LIABILITY OF TRANSFEREE, ETC.—If the tax herein imposed is not paid when due, then the spouse, transferee, trustee, *surviving tenant*, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, *or has on the date of the decedent's death, property included in the gross estate under section 811* (b), (c), (d), (e), (f), or (g), *to the extent of the value,* at the time of the decedent's death, of such property, *shall be personally liable for such tax.* * * * [Emphasis supplied.]

[10] In this connection, the gift tax provisions are essentially the same as the estate tax provisions and cases involving gift taxes are authority in reaching the proper interpretation of estate tax questions. *Equitable Trust Co., Trustee*, 13 T.C. 731.

Petitioner's next contention is that Commissioner Harrington was bound by the determination of his predecessor in office regarding the inclusion in the decedent's gross estate of any part of the corpus of the living trust created on September 12, 1941. At the time the executrix filed the estate tax return, she disclosed the fact that the trust had been created, attached a copy of the trust instrument to the return, and stated in Schedule G of the return that "The following two [11] transactions are reported for disclosure purposes only as they are not deemed taxable transfers." When Commissioner Andrews determined the deficiency of $50,939.14, he, in addition to other adjustments, included in the decedent's gross estate the promissory note transferred in 1951 but did not include therein any part of the corpus of the living trust. In her opening brief, the only authority cited by petitioner in support of her present contention is 14 Op. Atty. Gen. 275, rendered in 1873. This authority was considered and explained in I.T. 1966 (III-1 C.B. 215), as follows:

The opinion of the Attorney General in 14 Op. Atty. Gen., 275, is sometimes cited for the general proposition that the Commissioner can not reopen a case decided by his predecessor except for errors in calculation. The exact issue there decided, however, does not bear out this general statement. The conclusion of the opinion reads:

The ruling of the present Commissioner in recent cases can have no bearing upon the decision of the Commissioner in cases for which relief is sought. It was a matter of discretion with the old Commissioner, and is also a matter of discretion with the present Commissioner.

That a proper exercise of discretion by the Commissioner can not be later reviewed may be granted. In the instant case, however, there is no question of the exercise of any discretionary powers by the Commissioner; the question is purely the proper interpretation of the statute. * * *

In the instant case, whether any part of the corpus of the living trust is includible in the decedent's gross estate under section 811 (d) is a question of law. It has been held consistently that the interpretation of the law by one Commissioner is not binding upon his successor who may reconsider and reverse any decision of his predecessor, unless precluded from doing so by the statute of limitations or any other special provision of the law. The most recent decision on this point is *Automobile Club of Michigan* v. *Commissioner*, 353 U.S. 180, rehearing denied 353 U.S. 989, wherein the Supreme Court said:

The petitioner argues that, in light of the 1934 and 1938 rulings, the Commissioner was equitably estopped from applying the revocation retroactively. This argument is without merit. The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law.

We know of no special provision of the law that would preclude Commissioner Harrington from correcting what he found to be a

[11] The other transaction was a transfer by decedent on February 10, 1951, of a $10,000 promissory note to his wife.

mistake of law made by his predecessor, and we have previously held herein that in so doing he acted within the statute of limitations. Therefore, we hold that Commissioner Harrington was not bound by the determination of his predecessor. *Automobile Club of Michigan* v. *Commissioner, supra.* Cf. *Yokohama Ki-Ito Kwaisha, Ltd.,* 5 B.T.A. 1248, 1254; *Estate of W. S. Tyler,* 9 B.T.A. 255, 261; *James Couzens,* 11 B.T.A. 1040, 1154; *Old Farmers Oil Co.,* 12 B.T.A. 203, 214; *Sharpe* v. *Commissioner,* 107 F. 2d 13, 16 (C.A. 3, 1939).

Petitioner's next contention is that the respondent erred in determining that she was liable as a "transferee" as that term is used in section 900(a).[12]  Under this broad contention, she has argued many points, namely, the solvency of the decedent's estate; that except for two specific bequests aggregating $10,000 it has not been distributed; that at the present time it has assets of over $700,000; that respondent should have proceeded against the estate rather than against petitioner; that as surviving tenant of jointly owned property of over $303,000 she was not a "transferee of property of a decedent" as that phrase is used in section 900(a); that although the jointly owned property is includible in the "gross" estate under section 811(e), it is not a part of the "net" estate by reason of being included as a part of the marital deduction under section 812(e); that since the tax is imposed upon the transfer of the "net" estate, it is not only inequitable to take a part of the jointly owned property to satisfy the tax but by doing so the respondent deprives petitioner of her property without due process of law contrary to the provisions of the fifth amendment of the Constitution of the United States; and that in any event the liability of a transferee under section 900(a) is limited to the unpaid "basic" tax under subchapter A of chapter 3 and does not embrace the unpaid "additional" tax under subchapter B of chapter 3.  We think all of these argued points are in effect answered in respondent's favor by the clear and unambiguous provisions of sections 900(e) [13] and 827(b).[14]  Section 900(e) provides that as used in this section the term "transferee" includes "a person who under section 827(b), is personally liable for any part of the tax."  Section 827(b) provides that if the tax is not paid when due, then the "surviving tenant" who "receives, or has * * * property included in the gross estate under section 811 * * * (e) * * * shall be personally liable for such tax."

Congress made substantially the same provisions for the collection of an unpaid gift tax as for an unpaid estate tax.  See section 1025(a)(1) and (f) and 1009 of the 1939 Code.  These sections are identically the same as section 526(a)(1) and (f) and 510 of the Reve-

---

[12] See footnote 7.
[13] See footnote 8.
[14] See footnote 9.

nue Act of 1932. In *Evelyn N. Moore, supra,* the petitioner, a donee-transferee, made substantially the same arguments as does the petitioner in the instant case. We decided against the petitioner in the *Moore* [15] case and, as above indicated, we were affirmed by the Second Circuit. We followed the *Moore* case in *Equitable Trust Co., Trustee,* 13 T.C. 731, an estate tax case, and we think these cases are dispositive of the present issue in the instant case. See also *LaFortune* v. *Commissioner,* 263 F. 2d 186, 194 (C.A. 10, 1958).

We think the respondent has met the burden of proof placed upon him by section 1119(a) that petitioner is liable as a transferee under sections 900(a)(1) and (e) and 827(b). He has proven, either by stipulation or otherwise that the estate tax liability here in question has not been paid; that petitioner is a surviving tenant of joint property held by her and the decedent; that such jointly owned property was included in the decedent's gross estate under section 811(e); and that the value of such jointly owned property at the date of decedent's death was $303,099.59.

It may be noted in passing that petitioner's argument, *supra,* regarding the limiting of a transferee's liability under section 900(a) to the unpaid "basic" tax, while new here, is without merit. Petitioner's point is that the basic tax falls under subchapter A of chapter 3; that the additional tax falls under subchapter B of chapter 3; and that the liability under section 900(a), which falls under subchapter A, is made "subject to the same provisions and limitations as in the case of a deficiency in a tax *imposed by this subchapter.*" (Emphasis added.) However, section 937, which falls under subchapter B, provides that the tax imposed by section 935 (the "additional" tax) "shall be subject to the same provisions of law * * * as the tax imposed by subchapter A."

Petitioner has not argued in its briefs, assignment 5, regarding a contended-for increase in the marital deduction by reason of the family allowance made by the Probate Court. This same issue regarding the respondent's failure to allow the family allowance as a part of the marital deduction was conceded by the petitioner in the companion case of *Patricia B. Englert,* 32 T.C. 1008, on the basis of our decision in *Estate of Edward A. Cunha,* 30 T.C. 812, which was decided subsequent to the trial of these cases. We hold that the *Cunha* case is controlling here and decide this issue for the respondent.

The respondent's determination is sustained except for the concession made in his brief regarding an additional credit for Federal gift taxes.

*Decision will be entered under Rule 50.*

---

[15] See especially page 15 of our Opinion in 1 T.C. 14.