T.C. Memo. 2020-78

UNITED STATES TAX COURT

FREDERICK HOWE AND BONITA A. MACVAUGH-HOWE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29743-14.                          Filed June 8, 2020.

Gregory S. Markow, for petitioner Frederick Howe.

Mitchell B. Dubick, for petitioner Bonita A. MacVaugh-Howe.

Chad E. Martinelli and Darrick D. Sun, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  Respondent determined a deficiency, as amended by

amended answer to petitioners' amended petition, in petitioners' 2008 Federal

income tax of $8,431,433 and an accuracy-related penalty pursuant to section

6662(a) of $1,972,815.  Pursuant to the Court's order dated March 1, 2019, this

[*2] case was bifurcated for the purpose of addressing the application of equitable estoppel.[1] The Court held a partial trial commencing on May 28, 2019. The issues for our consideration are: (1) whether the notice of deficiency is valid and (2) whether respondent is estopped from denying the executed settlement agreement in Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated in our findings by this reference.

Petitioners resided in California when they timely filed their petition. On July 31, 2018, the parties filed a joint stipulation of settled issues in which they stipulated that petitioner wife no longer contests respondent's determination for 2008 set forth in respondent's amended answer to amended petition and that she is

---

[1]If petitioners prevail, no further proceedings are necessary. If respondent prevails, further trial is necessary to redetermine the deficiency and the penalty pursuant to sec. 6662(a) determined in the notice of deficiency and the amended answer to the amended petition.

**[*3]** entitled to relief from joint and several liability for the deficiency pursuant to section 6015(f).

I.    Background

Throughout 2008 Frederick Howe (petitioner) was the chief executive officer and majority common stock shareholder of MedImpact Healthcare Systems, Inc. (MedImpact). MedImpact was a C corporation incorporated in Delaware on November 6, 2002. On October 31, 2008, MedImpact's board of directors approved a resolution declaring a $45 million dividend to be paid pro rata to the shareholders.

Summit Ventures Holdings Fund 1, LP (Summit Ventures), was formed as a limited partnership in Delaware on August 23, 2007. Summit Ventures was a private equity firm that received funds from investors to invest in healthcare entities. During 2008 Summit Ventures owned interests in the following entities: Herae, LLC, Ventegra, LLC, Chronohealth, LLC, Intellitap, LLC, and Medical Pipeline, LLC (collectively, Schedule E entities). MedImpact transferred funds to the Schedule E entities in 2008.

Petitioner was the trustee of the Howe Family Trust pursuant to a grantor trust agreement dated May 30, 2003, and, as trustee, he was the sole limited partner in Summit Ventures. Effective October 31, 2008, petitioner, as trustee of

[*4] the Howe Family Trust, assigned a 20% limited partner interest in Summit Ventures to MedImpact. For 2008 Chronohealth, LLC, issued a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., to Summit Ventures. The other four Schedule E entities issued Schedules K-1 to the Howe Family Trust.

## II.     Corporate Audit

Internal Revenue Service (IRS) Revenue Agent Lord (RA Lord) began an audit of MedImpact's 2008 return in February 2011. David Wheeler, MedImpact's chief financial officer, represented the corporation during its audit. As part of the audit RA Lord performed a risk analysis which identified potential issues for audit, and she identified loans to the Schedule E entities. She looked at the transfers MedImpact made to the Schedule E entities to determine whether they were bona fide loans to those entities or whether they were dividends to petitioner.

On its books and records MedImpact recorded the transfers it made to the Schedule E entities as loans to petitioner. The Schedule E entities recorded the transfers they received as capital contributions by petitioner. RA Lord requested documents in support of the shareholder loans. She received a promissory note, an Excel spreadsheet listing loans that totaled the amount of the promissory note, and

[*5] an auditor's letter referencing the promissory note. The promissory note records petitioner as the borrower and MedImpact as the lender.

Mr. Wheeler provided a loan roll-forward schedule which listed the prior notes from MedImpact to petitioner. Using the loan roll-forward schedule, RA Lord traced the direct transfers from MedImpact to the Schedule E entities. From the loan roll-forward schedule RA Lord concluded that petitioner took draws from MedImpact which it recorded as receivables due from petitioner. MedImpact's corporate board meeting minutes show that petitioner's pro rata share of the $45 million dividend was credited to his note receivable balance. RA Lord determined that the loans from MedImpact to petitioner were bona fide loans with a stated interest rate, maturity date, and repayment date.

III.    Petitioners' Individual Audit and Appeals Office Process

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2008. Petitioner concluded that he had sufficient at-risk bases in the Schedule E entities and claimed deductions for losses they generated on Schedule E, Supplemental Income and Loss, for 2008. In February 2011 RA Lord began an audit of petitioners' individual 2008 Form 1040. Mr. Wheeler represented petitioner during the individual audit. Mitchell Dubick represented petitioner wife.

**[*6]** On May 10, 2012, after completing the individual audit, RA Lord sent petitioners a Notice of Proposed Adjustment (NOPA) and a Form 886-A, Explanation of Items. As part of her examination she considered whether petitioner had sufficient at-risk bases in the Schedule E entities and whether he was entitled to claim the loss deductions they generated. She looked at whether the transactions between MedImpact and the Schedule E entities were loans to petitioner or whether the corporation had made dividend distributions. On Form 886-A, RA Lord stated the facts as:

> [Petitioner] borrows amounts from MedImpact to personally invest in entities tied to the healthcare industry ("Schedule E entities").

> [Petitioner] takes draws from MedImpact throughout the year, which are converted to loans at year end with a stated interest rate.

> [Petitioner] provided the outstanding loan balance schedule as of December 31, 2008.

She further stated that petitioner deducted the loss generated by each of the Schedule E entities "rather than as a single flow through loss from the Summit Fund."

In the NOPA RA Lord denied the at-risk loss deductions petitioner claimed from the Schedule E entities. In reliance on Van Wyk v. Commissioner, 113 T.C. 440 (1999), and section 465 she concluded that because MedImpact had obtained

[*7] a capital interest in Summit Ventures during 2008, petitioner's claimed loss deductions from Schedule E were suspended for the year.

Petitioner retained Phillip Jelsma, a tax attorney and C.P.A., to draft a protest letter in response to the NOPA and to represent him before the IRS Appeals Office.[2] Mr. Jelsma reviewed the NOPA, including RA Lord's adjustment to the calculation of petitioner's at-risk bases and disallowance of the associated loss deductions. On June 12, 2012, Mr. Jelsma sent a protest letter on behalf of petitioner. He contended that the at-risk calculation was done incorrectly, including the calculation of the at-risk bases. He argued that RA Lord's reliance on Van Wyk was misplaced because petitioner did not borrow from another shareholder to invest in the Schedule E entities. He explained that the loans from MedImpact to petitioner were shown on MedImpact's financial statements and treated the same as any loan to a third party.

After RA Lord reviewed petitioner's protest letter, she closed the individual audit in July 2012 and transferred the individual administrative file to the Appeals Office. The individual audit file included a copy of the loan roll-forward schedule provided by MedImpact during the corporate audit. She did not send the Appeals Office the full corporate audit file of MedImpact.

---

[2]Mr. Dubick represented petitioner wife's interest at the IRS Appeals Office.

**[*8]** In February 2013 Appeals Officer James Parker (RO Parker) was assigned to consider petitioners' appeal of adjustments made by RA Lord, including the at-risk adjustment. RO Parker reviewed the NOPA, the individual audit file, and RA Lord's at-risk adjustments and disallowance of at-risk loss deductions. He held meetings with Mr. Dubick and Mr. Jelsma, and during one of those meetings they discussed the at-risk adjustments.

On February 12, 2014, Mr. Wheeler, on behalf of petitioner, and Mr. Dubick, on behalf of petitioner wife, each signed a Form 870-AD. A person with the appropriate authority signed and accepted the Form 870-AD on behalf of the Commissioner. Form 870-AD reduced petitioners' deficiency to $1,511,192 and the accuracy-related penalty to zero. Form 870-AD stated that the case would not be reopened by the Commissioner unless there were specific occurrences including "fraud, malfeasance, concealment, or misrepresentation of a material fact".

In March 2014 RO Parker finalized his Appeals Case Memorandum (ACM), which explained the resolution of the proposed adjustments to petitioners' Federal income tax for 2008. The ACM included a fact section which explained that petitioner reported losses on Schedule E for the Schedule E entities, MedImpact recorded loans to the Schedule E entities, and the Schedule E entities recorded

[*9] capital contributions in 2008.  The ACM summarized RA Lord's position that amounts lent by MedImpact were not considered in computing the extent to which petitioner was at risk and that the loss deductions exceeding the at-risk amount were includible in gross income.

The ACM described petitioner's position as stated in his protest letter, which was that the at-risk amount was incorrectly computed as a basis calculation rather than at-risk.  The ACM explained that during the meetings Mr. Jelsma raised a different argument, which was the following:

> The loans were not bona fide loans:
> - No notes were ever executed.
> - No repayments were ever made.
> - While interest accrued on MedImpact's books, no interest was ever recorded on the entity books or paid.
> - In lieu of interest, a "non-cash dividend" was reported by * * * [petitioner] in 2008.
> - On the books and tax returns of the entities, the amounts were reported as capital contributions, not loans.
>
> So the advances do not meet the IRS criteria for bona fide loans.  And despite how they were recorded by MedImpact, the amounts were not treated as loans by * * * [petitioner].  The amounts were incorrectly reported as loans by MedImpact's accountant, and correctly recorded as capital contributions by each entity.
>
> Therefore the amounts should be included in the at-risk computations. When included, * * * [petitioner] was adequately at-risk to deduct the losses in full.

[*10] RO Parker described petitioner's argument as "a different argument" from the one he made during the audit. Before petitioners were sent the Form 870-AD, the parties each made concessions in an effort to reach the agreement. Because of litigating hazards for the Government, RO Parker conceded the at-risk adjustments made by RA Lord in the NOPA.

On April 22, 2014, respondent assessed the deficiency in Form 870-AD. Approximately a week before the deficiency was assessed petitioners paid $887 on April 15, 2014. For tax year 2008 petitioners paid $17,149 of interest to respondent before the execution of the Form 870-AD.

RA Lord received a copy of the ACM from RO Parker. On May 28, 2014, RA Lord, her immediate supervisor, and local IRS counsel met with RO Parker to go over information discussed during the Appeals process. RA Lord and her immediate supervisor filed a Dissent for Appeals Decision (Dissent) to RO Parker's ACM. RA Lord filed the Dissent because a disposition of an issue in the case involved misrepresentation of material facts by petitioner. The Dissent explains that because of a misrepresentation of material facts, the Appeals Office concluded that the amounts petitioner borrowed were not bona fide loans. In the Dissent RA Lord claims that the during the Appeal's Office process, petitioner

**[*11]** claimed for the first time that amounts that he had withdrawn from MedImpact were not bona fide loans.

The Dissent requested that petitioner's case be reopened pursuant to Policy Statement 8-3 in the IRS Internal Revenue Manual (IRM) pt. 1.2.17.1.3(2) (Jan. 5, 2007), because the disposition of an issue in the case involved misrepresentations of material facts by petitioner. The Appeals Director for Field Operations West approved reopening petitioners' case for tax year 2008.

IV.    Notice of Deficiency

On September 17, 2014, respondent issued a notice of deficiency. In a statement attached to the notice of deficiency, respondent explained that petitioner had not established entitlement to the loss deductions he claimed from Schedule E. Before respondent issued the notice of deficiency RO Parker notified petitioners that the audit for their 2008 tax year would be reopened because of respondent's conclusion that petitioner had made misrepresentations of material facts.

OPINION

Challenge to the Validity of the Notice of Deficiency

The Court's jurisdiction to redetermine a deficiency depends upon the issuance of a valid notice of deficiency and a timely filed petition. Secs. 6212, 6213, 7442; Rules 13, 20; see, e.g., Midland Mortg. Co. v. Commissioner, 73 T.C.

**[*12]** 902, 907 (1980).  Section 7522(a) provides that the notice must "describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to tax, and assessable penalties included in such notice."  The parties do not dispute that a notice of deficiency was issued and that a petition was timely filed.  Rather, petitioner contends that the notice of deficiency is invalid because respondent deviated from internal policies in reopening the audit for his 2008 tax year.

A proceeding before this Court to redetermine a deficiency is a proceeding de novo, and we generally will not look behind a notice of deficiency to determine its validity.  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).  Our decision is based on the merits of the record before us and not on the record developed at the administrative level.  Id. at 328.  We have recognized an exception to this rule when there is substantial evidence of unconstitutional conduct on the Commissioner's part and the integrity of our judicial process would be impugned if we were to let the Commissioner benefit from such conduct.  Id.  On the facts before us we hold that there is no substantial evidence of unconstitutional conduct by respondent.  Accordingly, the notice of deficiency sent to petitioners is a valid notice.

**[*13]** <u>Equitable Estoppel</u>

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioner argues that the Form 870-AD executed by the parties is presumptively valid and that respondent is bound by contract law to honor the agreement. He contends that respondent bears the burden of proving the affirmative defense of fraud to reopen the audit for his 2008 tax year. We disagree.

Sections 7121 and 7122 and their accompanying regulations establish procedures for closing agreements and compromises of tax liabilities, respectively. These procedures are exclusive and must be satisfied for there to be a compromise or settlement that is binding on both the taxpayer and the Government. <u>Dormer v. Commissioner</u>, T.C. Memo. 2004-167, slip op. at 11-12; <u>Rohn v. Commissioner</u>, T.C. Memo. 1994-244, 1994 WL 232360, at *4. Form 870-AD is not a binding settlement agreement under section 7121. <u>Whitney v. United States</u>, 826 F.2d 896, 898 (9th Cir. 1987); <u>see also</u> <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 288-289 (1929).

**[\*14]** Petitioner contends that the settlement agreement embodied in Form 870-AD equitably estops respondent from setting aside the agreement and issuing a notice of deficiency which increases the parties' agreed-to deficiency. Respondent contends that petitioner concealed or misrepresented material facts, or both, and that this justifies respondent's reopening of the audit for petitioner's 2008 tax year. Respondent contends that during the Appeals Office process petitioner concealed that there were loans from MedImpact to petitioner.

Equitable estoppel is a judicial doctrine that precludes a party from denying his own acts or representations which induced another to act to his detriment. Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). The Supreme Court has held that "equitable estoppel will not lie against the Government as it lies against private litigants." Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 419 (1990).

The doctrine of equitable estoppel is applied against the Commissioner "with utmost caution and restraint". Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), aff'g in part, rev'g in part 32 T.C. 998 (1959). Any successful attempt to invoke equitable estoppel against the Commissioner must outweigh the policy consideration in favor of "an efficient collection of the public revenue". Id.

According to the Court of Appeals for the Ninth Circuit the traditional elements of equitable estoppel include: "(1) the party to be estopped must know

**[\*15]** the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." Baccei v. United States, 632 F.3d 1140, 1147 (9th Cir. 2011) (quoting Morgan v. Gonzales, 495 F.3d 1084, 1092 (9th Cir. 2007)). If one of these elements is not present, equitable estoppel is not appropriate. Nolte v. Commissioner, T.C. Memo. 1995-57, 1995 WL 37631, at \*5, aff'd, 99 F.3d 1146 (9th Cir. 1996).

In addition to the traditional elements, the party seeking equitable estoppel against the Government must show that: "(1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." Baccei, 632 F.3d at 1147. These three requirements need to be met before any determination of whether the traditional elements of equitable estoppel are present. Purcell v. United States, 1 F.3d 932, 939 (9th Cir. 1993).

"Affirmative misconduct on the part of the government requires an affirmative misrepresentation or affirmative concealment of a material fact such as a deliberate lie or a pattern of false promises." Baccei, 632 F.3d at 1147 (citation

**[*16]** omitted); see also Purcell, 1 F.3d at 940 ("Affirmative misconduct involves "'ongoing active misrepresentations" or a "pervasive pattern of false promises'" as opposed to 'an isolated act of providing misinformation.'" (quoting Watkins v. U.S. Army, 875 F.2d 699, 708 (9th Cir. 1989))).  There is no bright-line rule for detecting affirmative misconduct; "each case must be decided on its particular facts and circumstances."  Watkins, 875 F.2d at 707.

Petitioner argues that respondent engaged in affirmative misconduct by intentionally and deliberately failing to follow IRS internal policies and procedures in setting aside the parties' agreement in Form 870-AD.  He contends that affirmative misconduct is evidenced by respondent's intentionally ignoring the express terms of Form 870-AD in reopening the audit for his 2008 tax year and by accepting partial performance under the agreement.

The Form 870-AD executed by the parties specifically stated that, upon acceptance, petitioners' case would not be reopened unless there was "fraud, malfeasance, concealment or misrepresentation of material fact".  Policy Statement 8-3 similarly states that "[a] case closed by Appeals on the basis of concessions made by both Appeals and the taxpayer will not be reopened by actions initiated by the Service unless the disposition involved fraud, malfeasance, concealment or misrepresentation of material fact".  IRM pt. 1.2.17.1.3(2).

**[\*17]** For petitioner to estop respondent from reopening petitioners' audit for the 2008 tax year, resulting in making the notice of deficiency null and void, petitioner must show that respondent's action constituted affirmative misconduct such as a pattern of false promises or lies that respondent relied on when executing Form 870-AD.  Procedural rules and IRM policies "are merely directory, not mandatory, and 'compliance with them is not essential to the validity of a notice of deficiency.'" Collins v. Commissioner, 61 T.C. 693, 701 (1974) (quoting Luhring v. Glotzbach, 304 F.2d 560, 563 (4th Cir. 1962)); Estate of Brocato v. Commissioner, T.C. Memo. 1999-424, slip op. at 10.

Respondent contends that petitioner's concealment or misrepresentation of material facts at the Appeals Office conference justified reopening the audit for the 2008 tax year.  Petitioner argues that there was no concealment or misrepresentation of material facts and that respondent has been unable to point to what constituted either concealment or misrepresentation of material facts.  RA Lord testified that petitioner withheld that there was a promissory note between himself and MedImpact.  Mr. Jelsma testified that during the Appeals Office conference the loan between petitioner and MedImpact was never discussed and the discussions assumed that MedImpact made payments to the Schedule E entities

**[\*18]** on petitioner's behalf.  He testified that the discussions focused on how to characterize the payments made by MedImpact to the Schedule E entities.

We do not need to decide whether petitioner concealed or misrepresented material facts because even if we concluded that he did not and that respondent did not comply with IRS internal procedures, respondent's action would not be affirmative misconduct.  There is no evidence of ongoing active misrepresentations, a pervasive pattern of false promises, or any affirmative misconduct by respondent.  Therefore, petitioner has not satisfied the threshold elements of equitable estoppel.

However, assuming arguendo that petitioner did satisfy the threshold elements of equitable estoppel, he fails to satisfy all the elements of traditional equitable estoppel.  He does not meet the requirements of the third and fourth elements.

Under the third element of traditional estoppel, the party seeking estoppel must be ignorant of the true facts.  <u>Baccei</u>, 632 F.3d at 1147.  Petitioner argues that he relied on respondent's statement that the settlement agreement in Form 870-AD could not be reopened unless there was a concealment or misrepresentation of material facts.  Petitioner had the responsibility of understanding the law pertaining to whether respondent was bound by Form 870-AD.  <u>See</u> <u>Lavin v.</u>

**[\*19]** <u>Marsh</u>, 644 F.2d 1378, 1383 (9th Cir. 1981) ("Persons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation."). Since 1987 the Court of Appeals for the Ninth Circuit has taken the position that Form 870-AD is not a binding settlement agreement pursuant to sections 7121 and 7122. <u>See</u> <u>Whitney</u>, 826 F.2d at 898.

Under the fourth element of traditional estoppel the party asserting estoppel must detrimentally rely on the other party's conduct. <u>Baccei</u>, 632 F.3d at 1147. Detrimental reliance is a primary element of an estoppel claim. <u>See</u> <u>Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.</u>, 467 U.S. 51, 61-62 (1984). Reliance should be reasonable. <u>See</u> <u>Estate of Brocato v. Commissioner</u>, slip op. at 10.

Petitioner argues that he relied on the agreement in Form 870-AD to his detriment when he agreed to the decreased deficiency and paid $17,149 of interest against that deficiency. Agreeing to and making payments on a deficiency are not detrimental reliance for the purposes of equitable estoppel. <u>See</u> <u>Hudock v. Commissioner</u>, 65 T.C. 351, 363-364 (1975) (finding that executing an agreement and making a payment pursuant to that agreement was insufficient "to establish the requisite 'substantial change of position to (their) detriment in reliance upon the government's conduct'" (quoting <u>United States v. Saladoff</u>, 233 F. Supp. 255,

**[*20]** 258 (E.D. Pa. 1964))). Paying "taxes which are legally assessed does not constitute the type of detrimental reliance necessary to invoke estoppel." Bunce v. United States, 28 Fed. Cl. 500, 506 (1993) (citing Boulez v. Commissioner, 76 T.C. 209, 215 (1981), aff'd, 810 F.2d 209 (D.C. Cir. 1987)), aff'd, 26 F.3d 138 (Fed. Cir. 1994).

We conclude that petitioner has not met the requirements of equitable estoppel. We have considered all arguments made, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued.